LILLIAN H. BROGAN, a single woman, *Appellant,* v. JOHN W. FERGUSON and BERTIE M. FERGUSON, his wife, CHARLES B. ALLISON, and LAURA S. ALLISON, his wife,

PORTE F. QUINN and HELEN E. QUINN, his wife, ARCHIE
F. KARMAN and ...... KARMAN, his wife, and ALBERT
V. B. BENNETT, *Appellees.*

Opinion filed November 26, 1930.

Decree reversed on rehearing March 30, 1931.

*Loftin, Stokes & Calkins,* for Appellant;
*Crawford & May,* for Appellee, Porte F. Quinn.

1308

1310

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under chapter 14553, Acts of 1929, adopted by the court as its opinion, it is considered, ordered, and decreed by the court that the decree of the court below sustaining the plea of the defendant Quinn should be, and the same is hereby, affirmed, and the cause is remanded for further proceedings.

TERRELL, C.J., AND WHITFIELD, STRUM AND BROWN, J.J., concur.

ELLIS AND BUFORD, J.J., dissent.

---

## ON REHEARING.

## Division B.

### Opinion filed March 30, 1931.

1. Where one Ferguson had the right to require one Quinn "to save harmless" the former, by paying mortgages, it follows that one Brogan, as Ferguson's creditor, has the right to enforce Ferguson's claim against Quinn, in a suit in equity where the purpose

of the bill is to settle the rights and liabilities of all parties interested in real estate encumbered by two mortgages involved in such suit.

2. The practice in cases like this of bringing one suit to settle all the rights and liabilities of the parties interested in transactions involving a particular piece of real estate is permissible and should be encouraged where it eliminates expense and delay regarding a controversy which by appropriate allegations in a single bill of complaint can be settled in one suit.

3. The modern authorities agree that the doctrine of subrogation has been steadily expanding and growing in importance and extent in its application to various subjects and classes of persons and that the agreement out of which conventional subrogation arises and upon which it rests may be express or implied.

4. Where, as between the parties to a deed, the grantee by his contract agreed to save harmless the grantor from ''all liability whatsoever'' encumbering the mortgaged property, the appellant as a mortgagee is entitled to the benefit of this contract though she was unaware of its existence when made, under the familiar doctrine that a creditor is entitled by, equitable subrogation, to all securities held by a surety of the principal debtor.

5. The rule in equity that a creditor is entitled, by equitable subrogation, to all securities held by a surety of the principal debtor does not depend upon the character of the liability of the principal debtor to the creditor, or upon the existence of any relation between the creditor and the surety for the principal debtor, but is founded wholly on the right of the creditor to avail himself of whatever rights the surety has as against the principal debtor.

6. Generally before a legal subrogation can be enforced there must be a full satisfaction of the entire debt of the original creditor.

7. But the rule that before a legal subrogation can be enforced there must be a full satisfaction of the entire debt of the original creditor, does not prevent the bringing of a single bill of complaint which has for one of its objects the settlement and adjudication of a claim of subrogation which can be given effect upon the making of the principal decree in the cause, upon rendition of which, the right of subrogation claimed will be brought into existence.

8. Our previous holding is re-affirmed to the effect that ''an agreement by grantees that they will assume and pay *and save harm-*

*less* the grantors from all liability may be regarded, we think with propriety, as a contract of indemnity on the part of the grantees and not as an assumption by grantees of, or promise by them to pay, an existing mortgage indebtedness.''

9. In so holding, the Court did not overlook the well settled distinction between a contract to indemnify and an agreement to pay, nor the well settled rule to the effect that when the defendout promises to pay a certain debt due from the plaintiff to a third person, that the effect of his promise is not restricted, either as to form of pleading, rules of evidence or the measure of damages, by the fact that the defendant by his agreement further agrees to indemnify the plaintiff and save him harmless.

10. Where a covenant in a deed discloses the grantee received and held the legal title to land merely as trustee for another, and such covenant is contained in a quit claim deed only, by which the grantor did not agree to deliver or protect possession, nor in terms to assume and pay any particular debt represented by notes, mortgages, taxes and other expenses, but only ''all liability whatsoever'' on account of same, such covenant must be construed according to the intention of the parties as gathered from the writing and the circumstances under which the writing was made and delivered as shown by the record in the particular case, and where it does not convincingly appear to this Court that a prior construction by the Chancellor of the instrument involved, which was once affirmed by this Court, is clearly erroneous, the construction previously made will be adhered to on re-hearing.

11. The peculiar circumstances and facts in the instant case are sufficient to support a construction on this appeal that the undertaking here involved was that of indemnity only, notwithstanding the general rule is to the effect that where there is a direct and positive covenant ''to assume and pay'' an indebtedness that such covenant is not impaired by a further covenant ''to indemnify and save harmless'' from such indebtedness.

12. An agreement to ''assume and pay and indemnify and save harmless'' from a debt may ordinarily be said to contain not one but two distinct stipulations: First, an agreement to assume and pay the debt in plaintiff's place and stead, and second, an agreement to indemnify and save harmless from all such indebtedness as well, thereby giving effect to both undertakings.

On rehearing of an appeal from an interlocutory decree of the Circuit Court of Palm Beach County; Hon. C. E. Chillingworth, Judge.

Decree sustaining plea to bill in equity reversed on rehearing and cause remanded for further proceedings.

*Loftin, Stokes & Calkins,* of Miami, for Appellant;

*Crawford & May,* of Jacksonville, for Appellees.

PER CURIAM.—This Court, in an opinion prepared by Mr. Commissioner Mathews, heretofore affirmed an order by the Circuit Court of Palm Beach County sustaining a plea by appellee Quinn to a bill by appellant Brogan seeking to foreclose a second mortgage, and for a deficiency decree against the mortgagor and those who assumed payment of the mortgage, and to require the payment and discharge of a first mortgage encumbering the real estate covered by appellant's second mortgage.

Appellant was granted a rehearing and oral argument was had before Division B of this Court as to whether (1) Quinn agreed to "assume and pay" the mortgages in question, or only agreed to save Ferguson "harmless" from liability on account of the mortgages, and (2) whether on the entry of a decree against Ferguson, Ferguson's creditor Brogan, would have the right in equity to avail herself of the security held by Ferguson for the payment of the mortgages, if it be held that Ferguson's right against Quinn is one strictly of indemnity only as was heretofore decided in this case.

The original opinion in this cause determined that Quinn agreed to save Ferguson "harmless......from all liability whatsoever on account of notes, mortgages, etc." on the land in question.

If, therefore, Ferguson has the right to require Quinn "to save harmless" the former, by paying the mort-

gages, it follows that appellant Brogan, Ferguson's creditor, has the right to enforce Ferguson's claim against Quinn, in a suit where the purpose of the bill is to settle the rights and liabilities of all parties interested in the real estate encumbered by the two mortgages in question. Hopkins et al. v. Warner et al, 109 Col. 133, 41 Pac. 868.

The practice in cases like this of bringing one suit to settle all the rights and liabilities of the parties interested in transactions involving a particular piece of real estate is permissible and should be encouraged where it eliminates expense and delay regarding a controversy which by appropriate allegations in a single bill of complaint can be settled in one suit.

So it follows that even if Quinn only agreed "to save harmless the grantors from all liability whatsoever on account of notes, mortgages" etc., encumbering the mortgaged property, that Brogan would have the right in this suit to enforce the liability under the equitable theory of subrogation.

In Forman v. First National Bank of Quincy, 76 Fla. 48, 79 So. 742, this Court said:

"The modern authorities agree that the doctrine of subrogation has been steadily expanding and growing in importance and extent in its application to various subjects and classes of persons and that the agreement out of which conventional subrogation arises and upon which it rests may be express or implied."

The equitable rule of subrogation contended for by the appellant in this case is sustainable on the theory that since, as between the parties to the deed, the grantee by his contract agreed to save harmless the grantor from "all liability whatsoever" encumbering the mortgaged property, the appellant as a mortgagee is entitled to the benefit of this contract though she was unaware of its

existence when made, under the familiar doctrine that a creditor is entitled, by equitable subrogation, to all securities held by a surety of the principal debtor. Keller v. Ashford, 133 U. S. 610; 33 L. Ed. 667; Osborne v. Cabell, 77 Va. 462; Green v. Stone, 54 N. J. Eq. 387; 55 Am. St. Rep. 577; 34 Atl. 1099; Crowell v. Hospital of St. Barnabas, 27 N. J. Eq. 650.

In Hopkins v. Warner, 109 Cal. 133, 41 Pac. 868, the Court said:

"This rule in equity does not depend upon the character of the liability of the principal debtor to the creditor, or upon the existence of any relation between the creditor and the surety for the principal debtor, but is founded wholly on the right of the creditor to avail himself of whatever rights the surety has as against the principal debtor."

While generally before a legal subrogation can be enforced there must be a full satisfaction of the entire debt of the original creditor, (Marianna Nat'l Farm Loan Assoc. v. Braswell, 95 Fla. 510, 116 So. 639) this rule does not prevent the bringing of a single bill of complaint which has for one of its objects the settlement and adjudication of a claim of subrogation which can be given effect upon the making of the principal decree in the cause, upon the rendition of which, the right of subrogation claimed will be brought into existence, as would be the situation here if the Court should make a decree against Ferguson by which he would acquire a right of action against Quinn on the agreement contained in the deed hereinbefore mentioned to "assume and pay and save harmless" the grantor Ferguson from "all liability whatsoever......on account of or in behalf of the property herein described."

With respect to the nature of the obligations involved

in the deed under which Quinn and Allison acquired title, it was said in the previous opinion by Mr. Commissioner Mathews that "an agreement by grantees that they will assume and pay and *save harmless* the grantors from all liability may be regarded, we think with propriety, as a contract of indemnity on the part of the grantees and not as an assumption by grantees of, or promise by them to pay, an existing mortgage indebtedness."

In so holding, the Court did not overlook the well settled distinction between a contract to indemnify and an agreement to pay, (Wicker v. Hoppock, 6 Wall. 94, 18 L. Ed. 752) nor the well settled rule to the effect that when the defendant promises to pay a certain debt due from the plaintiff to a third person, that the effect of his promise is not restricted, either as to form of pleading, rules of evidence or the measure of damages, by the fact that the defendant by his agreement further agrees to indemnify the plaintiff and save him harmless. Locke v. Homer, 131 Mass. 93.

The construction here involved is according to the intention of the parties as gathered from the writing and the circumstances under which the writing was made and delivered as shown by the record in this particular case, and in view of the construction placed upon that writing by the Chancellor and the construction heretofore made in this case by this Court in its adoption of the opinion prepared by its Commissioner, it does not convincingly appear now that such prior construction of the instrument involved is so clearly erroneous that it should be overruled on this rehearing.

The covenant involved discloses that Ferguson received and held the legal title merely as trustee for

Allison and Quinn and that the covenant under consideration is, contained in a quit claim deed only, by which Ferguson did not agree to deliver or protect possession, nor in terms assume and agree to pay any particular debt represented by notes, mortgages, taxes and other expenses, but only "all liability whatsoever" on account of same.

These peculiar circumstances and facts in the instant case are sufficient to support a construction on this appeal that the undertaking here involved was that of indemnity only, notwithstanding the general rule is to the effect that where there is a direct and positive covenant "to assume and pay" an indebtedness that such covenant is not impaired by a further covenant "to indemnify and save harmless" from such indebtedness, and that an agreement to "assume and pay and indemnify and save harmless" from a debt may ordinarily be said to contain not one but two distinct stipulations; First, an agreement to assume and pay the debt in plaintiff's place and stead, and second, an agreement to indemnify and save harmless from all such indebtedness as well, thereby giving effect to both undertakings. Stout vs. Folger, 34 Iowa 75; Wicker v. Hoppock, *supra*.

For the reasons first stated, however, our former affirmance of the decree should be set aside and the decree appealed from reversed on rehearing, for further proceedings in accordance with this opinion.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.