Margaret A. Hubbard, a widow, v Highland Realty & Investment Company.

156 So. 322.
Division A.
Opinion Filed July 23, 1934.
Petition for Rehearing Denied Sept. 6, 1934.

Hampton & Jordan, for Appellant;

J. C. Adkins, for Appellee.

ELLIS, J.—On the 12th day of November, 1925, the Highland Realty and Investment Company, a corporation, sold to Mrs. R. B. Bostick a certain lot of land described as Lot Ninety-two (92) of Highlands, a subdivision in the City of Gainesville, Alachua County, Florida. A deed of conveyance was made to her by the grantor. Part of the purchase price was represented by three promissory notes, each in the sum of three hundred and twelve dollars and fifty cents, and payable one, two and three years, respectively, after date. They were signed by Mrs. Bostick and payable to the order of "Highlands Realty & Inv. Co."

To secure the payment of those notes Mrs. Bostick executed and delivered to the Highland Realty and Investment Company an instrument purporting to be a mortgage upon the land conveyed. The instrument contained many defects. The *tenendum* and *habendum* clause ran to J. A. Phifer instead of the Highland Realty and Investment Company. There were no witnesses to the instrument and there was no acknowledgment of its execution by Mrs. Bostick evidenced by a notary's certificate or that of any officer authorized to take acknowledgment of deeds.

However, in that condition the paper was delivered to the Clerk of the Circuit Court and by him spread upon the records of Alachua County in mortgage book 91 at page 6 on November 14, 1925.

On December 15, 1925, one month after the transaction mentioned, Mrs. Bostick conveyed the lot to J. J. Hubbard, and the deed of conveyance was duly recorded on the same day.

Mr. Hubbard died on the 3rd day of May, 1927, leaving a widow, Margaret A. Hubbard, two married daughters and a son. Those children of Mr. and Mrs. Hubbard conveyed to Mrs. Hubbard their interest in the land.

The estate of J. J. Hubbard was solvent. Mrs. Hubbard became administratrix of the estate of her deceased husband and on the 10th day of May, 1927, prepared a written notice to all creditors, legatees, distributees and all persons having claims or demands against the estate, to present their claims and demands against the estate to Honorable B. D. Hiers, County Judge of Alachua County, at his office in the Court House within twelve months from date. That notice was published for eight consecutive weeks in a newspaper published in Gainesville, Florida, beginning May 11, 1927. On completion of the publication of the notice same was filed in the office of the County Judge. See Secs. 5597, 5598 C. G. L. 1927.

On May 16, 1930, three years after the publication of the first notice to creditors the Highland Realty and Investment Company began its suit in the Circuit Court for Alachua County against Margaret A. Hubbard, a widow, the two daughters and their husbands and son to enforce the alleged mortgage executed by Mrs. Bostick to the complainant in November, 1925.

On August 18, 1930, the complainant dismissed the cause as to all defendants except Mrs. Hubbard.

On May 25, 1929, the instrument above described as a mortgage from Mrs. Bostick to the "Highland Realty & Inv. Co." was again filed for record in the Clerk's office

and recorded in "Book of Mtg. 101 on page 96." When thus recorded the certificate of acknowledgment by Mrs. Bostick was signed by W. Harvey Waits, a notary public, and bore the date of November 12, 1925. The names of two persons appeared as witnesses to the execution of the paper, but the *tenendum* and *habendum* clause of the instrument ran to J. A. Phifer, his heirs and assigns, just as when it was first spread on the pages of mortgage book 91 at page 6.

The last record of the instrument was made two years and four weeks after the death of J. J. Hubbard and more than two years after the first publication of notice to creditors as given by the Administratrix of Mr. Hubbard's estate.

The amended bill of complaint which was filed in August, 1930, alleges that the mortgage from Mrs. Bostick, referred to as having been executed on November 12, 1925, "provided among other things that the said Mrs. R. B. Bostick, or her assigns, should and would pay the said notes and each of them and the money represented thereby." The instrument contains no 'such' covenant, but the defeasance clause provides that if Mrs. Bostick, "her heirs or assigns, shall well and truly pay or cause to be paid the sum of money covenanted to be paid by said notes together with the interest to accrue thereon according to the legal tenor and effect thereof then this obligation shall become null and void, otherwise to remain in full force and virtue."

The amended bill alleges that Mr. Hubbard assumed the payment of the notes when he purchased the property from Mrs. Bostick, not that the assumption clause was contained in the deed of conveyance from Mrs. Bostick, but it is alleged that it "was then and there agreed that the said J. J. Hubbard should and would pay the balance due to this

complainant represented by the notes"; that the "aggregate amount of the notes given by Mrs. Bostick to this complainant was deducted from the consideration of said property agreed to be paid by J. J. Hubbard to Mrs. Bostick and that the said deed of conveyance from Mrs. R. B. Bostick to J. J. Hubbard was delivered to the said J. J. Hubbard and accepted by him with full and complete knowledge on his part of the indebtedness by Mrs. Bostick to the complainant.

The evidence does not establish that allegation as made. The witness, Mr. Harvey Waits, the notary public who officiated at the transaction and neglected to sign the certificate of acknowledgment at the time of the execution of the Bostick mortgage, said that when the trade was made for the purchase of the lot by Mr. Hubbard from Mrs. Bostick something was said about the balance due Highland Realty and Investment Company and "my stenographer was instructed to draw in the deed 'assuming that certain mortgage,' and I failed to catch it, and she failed to put it in." He said that Mr. Hubbard did not pay the full purchase price to Mrs. Bostick "in there that day." He said "there was nothing mentioned about the notes except there were three notes of equal amount that was to be taken care of."

The amended bill alleges that the notes were not paid; that the entire principal and interest are due and that Mrs. Hubbard, who claims some interest in the property has no claim that is superior to that of complainant; that her interest is inferior, subordinate and subject to the lien of the complainant.

The prayer is for an accounting as to how much is due to the complainant and in default of the payment of the amount found to be due to the complainant that the prop-

erty be sold and the proceeds of the sale be applied to the payment of the mortgage debt.

The estate of J. J. Hubbard is not sued. Mrs. Hubbard is not sued as administratrix.

The Chancellor rendered a decree in favor of the complainant for the full amount of the debt due as evidenced by the notes and ordered the property to be sold to satisfy the claim in default of payment by Mrs. Hubbard, or someone for her.

From that decree Mrs. Hubbard appealed.

Neither the allegations of the bill nor the evidence taken before the Master show or tend to show that Mrs. Hubbard is liable personally upon the notes executed by Mrs. Bostick. The evidence fails to show clearly a promise by Mr. Hubbard to pay them and wholly fails to show that there was reserved by him from the purchase price of the lots which he was to pay Mrs. Bostick the amount due on the notes; nor does the evidence show that Mrs. Hubbard knew of the existence of the complainant's claim until a short while before the institution of the suit.

If Mr. Hubbard assumed and agreed to pay the debt when he purchased the property from Mrs. Bostick then he became personally liable and could be treated as the principal debtor, but his assumption of the debt did not relieve Mrs. Bostick of her liability to the complainant, but the undertaking may be enforced in equity against the grantee by the mortgagee to whom the grantee agreed to pay. See Herrin v. Abbe, 55 Fla. 679, 46 South. Rep. 183, 18 L. R. A. (N. S.) 907; Enns-Halbe Co. v. Templeton, 101 Fla. 609, 135 South. Rep. 135; Hardee v. Bennett, 105 Fla. 282, 140 South. Rep. 906; Hartman v. Pool, 103 Fla. 858, 139 South. Rep. 589, where the assumption by the grantees of the mortgage debt was enforced against a married woman.

Hawley v. American Bank & Trust Co., 110 Fla. 116, 148 South. Rep. 521, where an assumption clause in a paper which appeared on its face to be a deed of conveyance, but was in fact a mortgage, was not enforced. Whitfield v. Webb, 100 Fla. 1619, 131 South. Rep. 786; Brogan v. Ferguson, 101 Fla. 1306, 131 South. Rep. 171; Slottow v. Hull Inv. Co., 100 Fla. 244, 129 South. Rep. 577. In the last cited case the doctrine as adopted in this State was expressed by Mr. Justice STRUM, speaking for the Court as follows:

"The doctrine which commends itself to us as sanctioned by reason as well as by the present weight of authority lies between the two extremes just stated. For one reason or another, the courts are gradually uniting upon the doctrine, which we here adopt, that the relation of principal and surety between the mortgagor and his grantee, created in the manner above stated, does not in and of itself involve the mortgagee in its legal effects. His rights remain unchanged, unless by his voluntary agreement, or by his dealings with the grantee, the mortgagee in effect accepts the grantee alone as the principal debtor or estops himself to further assert a personal liability against the mortgagor. Until the mortgagee thus recognizes the grantee alone as the principal debtor, the mortgagee may treat both the mortgagor and the latter's grantee as principal debtors, and may have a personal decree against both or either, the obligation of the grantee being an additional obligation of which the mortgagee may avail himself or not, at his election. The mortgagee may sue the mortgagor alone, or may accept the grantee's assumption of the debt and may bring his action against the latter."

In the case at bar, however, the complainant pursues neither course. It neither treats Mrs. Bostick, the original

debtor, nor Mr. Hubbard, the purchaser, as the principal debtor, nor does the complainant treat them both as principal debtors, although in the bill there is an allegation which indicates that it was the purpose of the complainant to treat J. J. Hubbard as the principal debtor. If the complainant desired its bill to be so construed then under the doctrine in Slottow v. Hull Investment Co., *supra,* it is estopped from treating Mrs. Bostick as the principal debtor, but the complainant should have made the Administratrix of the estate of J. J. Hubbard defendant.

The complainant makes Mrs. Hubbard, the widow, sole defendant in the case. She does not owe the debt. There was no assumption of it by her and no accounting could be taken against her, if an accounting in any case was at all necessary.

In the case at bar the complainant does not use the personal representative of the grantee who according to the bill asuumed personal liability for the debt, nor does it join as defendant the original debtor, Mrs. Bostick, but brings the suit against one who is not personally liable for the debt, nor is she sued in her capacity of Administratrix of her husband's estate, but she is made defendant because the title to the land is in her and she is therefore a necessary party to the suit to enforce the mortgage, and as no personal judgment for a deficiency is sought against Mrs. Bostick, who conveyed all her interest in the property, she was not a necessary party. See Hinson v. Gammon, 61 Fla. 641, 54 South, Rep. 374; Robertson v. Carson, 19 Wall. (U. S.) 107, 22 L. Ed. 178.

So the case is simply one in which a proceeding *in rem* to enforce a lien of a mortgage against certain land is brought against the holder of the legal title. No personal judgment is sought for a deficiency either against the origi-

nal mortgagor, Mrs. Bostick, or Mr. Hubbard's estate, who it is alleged agreed to pay the debt.

As to the record of the mortgage in its imperfect condition no advantage can be taken on that account because from the evidence Mr. J. J. Hubbard knew of the existence of the mortgage and of course took the title subject to the lien, and his wife, who inherited the property in part from her husband and acquired it in part from her children who inherited from their father, took the title subject to the same encumbrance.

The case of Brooks v. Federal Land Bank of Columbia, 106 Fla. 412, 143 South. Rep. 749, has no bearing on the case.

The Chancellor's decree was correct. No error appears in the record, so the decree is affirmed.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.