### GOLDENBERG v. WARDELL et al.
### No. 6885.

United States Court of Appeals for the District of Columbia.
Decided Aug. 2, 1937.

---

[9] 48 Stat. 955 (28 U.S.C.A. § 400).

Morris Simon, Lawrence Koenigsberger, and Eugene Young, all of Washington, D. C., for appellant.

Brice Clagett, Charles E. Wainwright, and Kahl K. Spriggs, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This is an appeal by Carrie Goldenberg, plaintiff below, from a decree in an equity suit in which she was denied possession of certain securities in the hands of the receiver of the District National Bank of Washington.

It appears that on October 20, 1931, Samuel Goldenberg, husband of the appellant, executed and delivered to the District National Bank of Washington, his certain promissory note as of that date wherein he promised to pay to the bank the sum of $12,000 with interest, on demand. The note was secured by certain collateral stocks and a bond belonging to the maker.

The terms of the note are in part as follows:

"On demand after date for value received, the undersigned promises to pay to District National Bank or order at the District National Bank of Washington the sum of Twelve Thousand & 00/100 Dollars with interest at the rate of Six per centum per annum, said interest payable as the holder hereof may demand, having deposited herewith and pledged as collateral security for the payment of this and any other liability of the undersigned to the holder hereof, the following property, to wit: * * *

"Second. That the collateral herewith pledged, including any and all additions thereto or substitutions therefor, together with any and all other securities and property in the possession of the holder (belonging to any of the parties liable hereon), whether pledged or left with the holders hereof for collection or safekeeping, shall be held as one general collateral for the whole or any part of this, any or all obligations due, or hereafter to become due by the undersigned to the said holder."

The note was curtailed from time to time until on July 18, 1932, there was a principal balance due upon it of $6,594.83.

At and before the time of this transaction the defendant Samuel Goldenberg was president of a corporation known as the Vogue Dry Cleaning Company, Inc., hereinafter called the Vogue Company, and was owner of 50 per cent. of its capital stock.

On June 10, 1932, the Vogue Company executed and delivered to the bank its promissory note signed in its name by Samuel Goldenberg, as president, and made payable to the bank 90 days after date, in the sum of $15,000. The note when delivered was indorsed by Samuel Goldenberg and Morris Y. Needle, the latter owning the remaining 50 per cent. of the capital stock of the Vogue Company. On September 12, 1932, the note of the Vogue Company was renewed by a renewal note of like amount, bearing a similar indorsement of that date. In October or November of 1932 the Vogue Company went into bankruptcy.

On January 24, 1935, the present case was begun in the lower court by Carrie Goldenberg, wife of Samuel Goldenberg, as plaintiff, who filed a bill in equity in which she averred that in July, 1932, she had on deposit with a building association in Washington, D. C., a sum in excess of $4,000 which was her sole and exclusive property; that shortly prior to July 18, 1932, it was agreed by and between Samuel Goldenberg and Christian J. Gockeler, who was an officer of the District National Bank, with authority to act in the premises, that if the plaintiff would withdraw from the building association the sum of $4,000 and apply it to the payment of the indebtedness of her husband, Samuel Goldenberg, upon the note above set out, the bank would deliver the collaterals securing the note to such firm of stockbrokers as might be designated by her or by her husband, upon payment to be made to the bank by such stockbrokers of the balance owing upon the note after payment of

the sum of $4,000 thereon; that thereafter an agreement was entered into by and between the plaintiff and her husband by which it was agreed between them that the plaintiff would pay the sum of $4,000 out of her own funds on account of the promissory note of her husband to the bank, and in consideration thereof her husband would convey to plaintiff all of said collateral securities, subject to the lien of the bank for the balance remaining due thereon after the payment of said sum of $4,000; and that the plaintiff would arrange with a firm of stockholders to have them advance on the security of the collateral stocks aforesaid such sum of money as, together with the said sum of $4,000, would be required to pay the note of her husband in full, and that thereupon the collaterals would be delivered to the stockbrokers as the property of plaintiff, so that plaintiff would then own the stocks subject only to the lien of the stockbrokers for the amount advanced by them; that thereafter and pursuant to this agreement her husband, acting on behalf of both himself and plaintiff, made an arrangement to have the stock delivered to a firm of stockbrokers who would be acting on behalf of the plaintiff and would advance upon the security thereof such amount as would fully pay the balance owing upon the note, after the application of the $4,000 payment upon it as aforesaid; that plaintiff thereupon in pursuance of this agreement withdrew the sum of $4,000 from the building association and paid the same to the bank and the sum was credited upon the aforesaid note, thereby reducing the same to the sum of $2,594.-83; that the plaintiff thereafter acting by and through her husband offered to pay the balance due upon said note upon compliance by the bank with its agreement to release said collateral securities, but the bank thereupon notified her husband who was acting for her that it would not deliver up or release the collateral upon payment of the balance due upon said note, but, on the contrary, would refuse to do so, and did so refuse; that thereafter the bank went into receivership and the defendant Justus S. Wardell is the duly acting and qualified receiver thereof; that the receiver has refused and does now refuse to release, deliver up, and surrender said collaterals in accordance with said agreement; that the collateral at the time of the payment of the $4,000 to the bank was of the total market value of approximately $9,000 and at the date of the commencement of this suit was of the value of $11,000; and that it is in the pos-

session of the defendant as receiver as aforesaid. The plaintiff tendered herself ready, able, and willing to pay to the defendant the balance owing on said note of her husband, Samuel Goldenberg, with interest to the date of payment, upon delivery of the collaterals in accordance with said agreement, and she prayed that a decree be passed adjudging her to be the owner of said securities and entitled to the possession thereof; and that the receiver be required to deliver the same to her upon payment to him of such amount as the court may decree ought to be paid.

The defendant as receiver filed his answer to the bill wherein he denied the existence of the agreement alleged by the plaintiff to have been entered into by and between her husband and Christian J. Gockeler, acting for the bank, and denied that Gockeler possessed authority to make such an agreement for the bank or to bind the bank thereby. The receiver admitted the payment of $4,000 by the plaintiff upon the debt, but also alleged that by the terms of the note executed by Samuel Goldenberg to the bank the collateral securities deposited therewith were to be held by the bank as one general collateral security for the whole or any part of the obligation and for any and all obligations due or thereafter to become due from said Goldenberg to the bank, and averred that under the provisions relating to the collateral contained in the note as above set out the bank was entitled to hold the collateral as security also for the payment of the note dated June 10, 1932, executed to the bank by the Vogue Company by Samuel Goldenberg as president and indorsed by Samuel Goldenberg and Morris Y. Needle, in the sum of $15,000, which note remained unpaid and was held by the bank as a valid obligation of the Vogue Company and Samuel Goldenberg. The receiver therefore denied the claims contained in the plaintiff's bill.

The trial justice after hearing the testimony in the case, adjudged, ordered, and decreed:

"1. That the plaintiff, Carrie Goldenberg, has a lien, in the amount of Four thousand dollars ($4,000), with interest thereon at the rate of six per centum (6%) per annum from the 18th day of July, 1932, on the following bond and stocks, mentioned and referred to in the bill of complaint herein, in the hands of the defendant, Norman R. Hamilton, as Receiver of District National Bank of Washington, or such other secur-

ities as he may hold in substitution therefor, to wit: [securities itemized]

"2. That the said defendant, as Receiver as aforesaid, be, and he is hereby directed forthwith to pay said sum of money, with interest as aforesaid, to the said plaintiff, or to her attorneys of record herein.

"3. That upon payment of said sum of money, with interest as aforesaid, the said defendant, as Receiver as aforesaid, shall be entitled to said bond and stocks or such other securities as he may hold in substitution therefor, free, clear and discharged of any and all claim or lien of the said plaintiff to or upon the same.

"4. Except as herein decreed, all other relief prayed is hereby denied."

Whereupon the plaintiff, Carrie Goldenberg, perfected her present appeal to this court.

We agree with the decree of the lower court.

As above set out, it was provided in the collateral note held by the bank that the securities deposited therewith were "pledged as collateral security for the payment of this and any other liability of the undersigned to the holder hereof. * * *" The collateral note also provided in terms that the securities thereby pledged "shall be held as one general collateral for the whole or any part of this, any or all obligations due, or hereafter to become due by the undersigned to the said holder."

At the time in question Samuel Goldenberg was liable upon his own note to the bank to which the securities were held as directly collateral and also upon the promissory note of the Vogue Company which he and Needle had indorsed concurrently with the issuance thereof.

■ It is our opinion that the provisions above set out relating to the collateral authorized the holding of such securities for the liability of Goldenberg upon the Vogue note.

■ It is contended by appellant that no obligation or liability to the bank arose from the indorsement by Samuel Goldenberg upon the Vogue Company note, nor could arise, until the note itself matured, and the indorser's obligation thereon became absolute. It is argued accordingly that inasmuch as the indorser's obligation was contingent only, it was not a liability within the terms of the collateral note.

However, the word "liabilities" in the provision concerning the collateral security includes also contingent liabilities.

In Cochran v. U. S., 157 U. S. 286, 15 S. Ct. 628, 632, 39 L.Ed. 704, the court said:

"We know of no definition of the word 'liability,' either given in the dictionaries or as used in the common speech of men, which restricts it to such as are absolute, or excludes the idea of contingency. In fact, it is more frequently used in the latter sense than in the former, as when we speak of the liability of an insurer or a common carrier, or the liability to accidents or to errors; and in Webster's Dictionary the word 'liable' is said to refer 'to a future possible or probable happening, which may not actually occur, as horses are liable to slip; even the sagacious are liable 'to make mistakes.' "

In 36 C.J. 1051 it is said:

"While 'liability' may include debts or indebtedness, it is not generally limited to such terms. It is broader, 'Liability' is largely a correlative term, although, ordinarily, it means an obligation which may or may not ripen into a debt, and includes in addition existing obligations which may or may not in the future eventuate in an indebtedness. In a special sense it is used to denote inchoate, future, unascertained, or imperfect obligations, as opposed to debts, the essence of which is that they are ascertained and certain."

In Daniels v. Goff, 192 Ky. 15, 232 S.W. 66, it is held that "existing liabilities" is a sufficiently broad and comprehensive term to embrace conditional or contingent obligations which may or may not in the future result in indebtedness.

See Fidelity & Deposit Co. of Md. v. Commonwealth Trust Co., 65 Misc. 88, 119 N.Y.S. 598; Wentz v. State, 108 Neb. 597, 188 N.W. 467; Brogan v. Ferguson, 101 Fla. 1306, 131 So. 171, 133 So. 317.

■ It is further argued in behalf of appellant that the credit extended by the bank to the Vogue Company was not actually based upon the collateral deposited by Samuel Goldenberg to secure his note inasmuch as his note bore date of October 20, 1931, whereas the original loan to Vogue Company had been made on or about March 3, 1927. It appears from the record, however, that the Vogue Company note had been extended from time to time in substantially the same form and as Samuel Goldenberg testified, "The Vogue Dry Cleaning has al-

ways been intermingled with me at the bank." It is not therefore unreasonable to believe that his interest in the Vogue Company was such that he was willing to protect its credit by the hypothecation of the collateral securities in question for the debt due by the company as well as that owing by himself to the bank.

It is contended by appellant that Samuel Goldenberg's obligation upon his own note to the bank was a sole and separate obligation whereas his liability as indorser upon the Vogue Company note was a joint liability with Needles, his coindorser, and that under the provisions relating to the collateral such a joint obligation was not protected or secured thereby. However, under the Negotiable Instruments Law, section 1372, D.C.Code 1901 (D.C.Code 1929, T. 22, § 98), the obligation assumed by Samuel Goldenberg as indorser of the Vogue Company note was a joint and several obligation and not a joint obligation only, and consequently the foregoing contention of the plaintiff cannot be sustained.

It is also contended on behalf of plaintiff that even if the bank had the right to hold the securities for the Vogue Company note of June 10, 1932, it lost that right when it extended the time for the payment of the note by accepting a renewal note from the Vogue Company dated September 12, 1932, payable 90 days after date. It is claimed that an owner of property pledged to secure the debt of another stands in the position of a guarantor or surety, and the collateral will be released under the same circumstances that a surety personally bound would have been released. Citing Brandt on Suretyship (2d. Ed.) § 34.

We think, however, that the weight of authority is to the effect that under such circumstances a renewal note does not release or destroy the pledge:

As was said in Citizens' Bank & Trust Co. v. Thornton (C.C.A.) 174 F. 752, 762:

"By its express terms the pledge secured 'any other debt due or to become due.' The renewal of the old Buckmaster and Williams debt by giving a new note would not release or destroy the pledge as a security for the debt, or deprive the debt, in its new form, of the benefit of that pledge."

See In re Goodhue Motor Company (D. C.) 28 F.(2d) 402; Church v. Sweetland (C.C.A.) 243 F. 289; Cobb v. Vaughan & Co., 141 Va. 100, 126 S.E. 77, 43 A.L.R. 177; Holland Trust Company v. Waddell, 75 Hun, 104, 26 N.Y.S. 980; First National Bank v. Gunhus, 133 Iowa, 409, 110 N.W. 611, 9 L.R.A.(N.S.) 471.

It is contended by appellant that although there were no special findings of fact by the trial justice, the fact that he signed the decree above set out awarding the appellant, Mrs. Goldenberg, a lien on the collateral for $4,000, being the amount of her money paid to the bank, is equivalent to a finding that the money paid to the bank was her money, was known to the bank to be her money, and was paid under the agreement claimed by her and testified by her and her husband to have been made.

We think that the testimony in the case does not sustain this claim of the appellant and, moreover, that the decree of the court awarding appellant the sum of $4,000 payable by the bank should not be understood as sustaining appellant's claim in this respect. The testimony sustains the receiver's claim that Gockeler was not authorized to make the alleged contract with appellant, and consequently that the payment of $4,000 was made by her under a mistake of fact, and that equity should require that it be repaid to her.

Accordingly, we affirm the decree of the lower court at the cost of appellant.

Affirmed.

GRONER, J. (dissenting).

I think the decree should be reversed and the cause remanded to the District Court with instructions to find the facts and make conclusions of law in accordance with the rule.

I am unable on the present record to understand the grounds or reasons for the decree as entered below.