**In re Donald LOCKWOOD and Ana Lockwood, his wife, Debtors.**

**Bankruptcy No. 80–00462–BKC–JAG.**

United States Bankruptcy Court,
S. D. Florida.

July 22, 1980.

Jerry Kahn, North Miami Beach, Fla., for debtors.

Francis E. Holden, Jr., P.A., Hialeah, Fla., for Gunter.

Jeanette Tavormina, Miami, Fla., trustee.

JOSEPH A. GASSEN, Bankruptcy Judge.

### ORDER DENYING CONFIRMATION OF AMENDED CHAPTER 13 PLAN AND OPINION

This matter came on for hearing to consider confirmation of the amended chapter 13 plan pursuant to 11 U.S.C. 1321 filed by the debtors herein.

The initial hearing on confirmation was on June 20, 1980 and some evidence taken at that time. The hearing was adjourned and reset ultimately for July 7, 1980 pursuant to the amended order resetting confirmation hearing and requiring further disclosures (C.P. No. 13) entered on June 24, 1980.

From the record herein, including all court papers, exhibits admitted into evidence, testimony under oath by the witnesses, and statements of counsel, as officers of the court, the court has made the following findings, reached the following conclusions, and come to the opinion set forth herein.

At the time of the adjourned and reset hearing on confirmation, the undersigned judge had not read the transcript of the creditors' meeting held under 11 U.S.C. § 341, although it had been attached to the Memorandum in Objection to Confirmation of Chapter 13 Plan. At the hearing all parties in interest stipulated that the court could read the transcript and consider the testimony presented at that meeting in connection with the court's decision on confirmation of the amended plan.

This matter commenced as an original petition under chapter 13 of the Bankruptcy Code. The debtors, Donald Lockwood and Ana Lockwood, are husband and wife. In early 1979, Donald Lockwood had lost a job which had been paying him approximately $23,000 per year and at the time of the filing of these proceedings, on April 24, 1980, and at the time of the hearing on July 7, 1980, he and Mrs. Lockwood as a team, worked for Mr. Lockwood's mother in the operation of a small restaurant and were drawing between them $500 per month with the understanding that they would

participate in profits of the restaurant business after it had been established. At the time of hearing, there were no profits to report on that restaurant business and the Lockwoods were attempting to support themselves and their two children on the draw of $500 per month plus approximately $100 additionally in tips.

At the time of filing, the Lockwoods lived and do still live in a trailer located at 2775 West Okeechobee Road, Lot 97, Miami, Florida, rented from the parents of Ana Lockwood. In January or February, 1980, prior to the filing on April 24, 1980, they removed themselves from their previous residence at 18214 Oleta Drive, Miami, Florida, a single-family home owned by the debtors as tenants by the entirety. The house is encumbered by a first mortgage with an outstanding principal balance of $29,074.17 held by J. D. Gunter and Margaret V. Gunter, his wife, and a purchase money second mortgage in the amount of $5,000 held by Bierman, Sonnett, Beiley and Osman, P.A.

The first mortgage has been in default since July 1, 1979, the debtors having made no monthly payments as required by said mortgage from that date. The mortgagees rejected a tender of arrearages and elected to accelerate the entire mortgage balance pursuant to the terms of the mortgage and the promissory note it secured. In fact, foreclosure proceedings were instituted in state court prior to the commencement of the chapter 13 proceedings in this court. The second mortgage has also been in default since July 31, 1979.

Prior to January, 1980, the Lockwoods had made some, but not extensive, effort to sell the residence at 18214 Oleta Drive without success. The property was vacated by them in January or February of 1980 and an agreement to purchase it (Debtors' Exhibit No. 5) was entered into between the Lockwoods, as seller, and Jerry Kahn, as buyer, on February 19, 1980. Jerry Kahn is an attorney and was acting on his own behalf in connection with the agreement to purchase. The Lockwoods were not represented by an attorney regarding that agreement.

Mr. Lockwood testified that Mr. Kahn advised him that if the Lockwoods would permit Kahn to represent them as their attorney, he, Kahn, would follow a procedure in chapter 13 which would result in the Lockwoods not having any further exposure under the first or second mortgage. Kahn agreed to do this without charging any fee to the Lockwoods.

At or about the same time, Jerry Kahn entered into a lease on the property and addendum thereto with Jerry and Vyvyan Gilday as lessees, admitted into evidence as Debtors' Exhibit No. 3. The Gildays have occupied the premises and performed under Exhibit No. 3 since late February, 1980. None of the rental proceeds have been, or are to be received by the debtors, but are being received by Jerry Kahn.

In their chapter 13 statement, the debtors listed only their secured creditors and did not list any unsecured creditors whatsoever. The amended chapter 13 plan deals only with the secured creditors and priority claims and makes no provision whatsoever for unsecured debt. However, the Lockwoods did have several unsecured creditors as reflected by the amendment to chapter 13 statement (C.P. No. 6) in which three such obligations totaling approximately $1,600 were set forth. Mr. Lockwood testified that he would continue paying those accounts at the rate of approximately $100 per month out of the tip money that he and Mrs. Lockwood received at the restaurant over and above the budget set forth in the chapter 13 statement.

The funds for bringing the first mortgage current, settling with the second mortgagee, (by paying $2,500 as settlement in full of the $5,000 balance,) and paying priority claims in execution of the amended chapter 13 plan, are being furnished by Jerry Kahn and he stated that those funds are presently in his trust account for that purpose.

The only effect of the plan on the indebtedness of the debtors is the settlement of the second mortgage and the reinstatement of the first mortgage on the house which

Jerry Kahn is purchasing. Yet the feasibility of the plan is dependent on this very purchase, which removes possession and ownership of the house from the debtors and gives it to Jerry Kahn.

The second mortgagee has consented to the plan. The first mortgagees are objecting to confirmation of the plan and are resisting it vigorously.

The debtor, Donald Lockwood, testified that he would receive benefit by avoiding a foreclosure on his record and by avoiding the possibility of deficiency judgments against him. However, there could be no deficiency asserted against the Lockwoods in any state court mortgage foreclosure of the first mortgage.

The first mortgage was originally entered into by the previous owner in December of 1972, prior to the time that the debtors owned the mortgaged property. The parties agreed that the Lockwoods had purchased the property subject to the said first mortgage but did not assume it. A modification of the original mortgage had been entered into by the first mortgagor before the Lockwoods took subject to it.[1] Not having assumed the original mortgage or entered into any new agreement with the mortgagees, the Lockwoods could not be found personally liable to the first mortgagees for a deficiency. *Hubbard v. Highland Realty & Inv. Co.*, 115 Fla. 834, 156 So. 322 (1934).

The second mortgage was a purchase money mortgage.

The evidence before the court of value of the property ranged from a low of $35,000 as per the testimony of Donald Lockwood and Jeanette Tavormina, the trustee, to a high of $45,000 as per the appraisal of Paul Mayhew received in evidence without objection as secured Creditors' Exhibit No. 1. The purchase price to the Lockwoods in July, 1978, was $40,294.72. There was also evidence that the tenants (Gildays) were making substantial improvements on the property which would likely result in some increase in its value. The first mortgagees' claim was $29,074.17 as of July 1, 1979 plus interest, costs and attorneys' fees. The second mortgage has an unpaid balance of $5,000.00 and interest since July 31, 1979. Under the policy of the Florida courts as enunciated in Florida Statutes, § 702.06, and the cases thereunder, it is likely that no deficiency would be entered against the debtors upon foreclosure even as to the second mortgage since it was a purchase money mortgage and the value, (regardless of the amount bid at foreclosure sale,) exceeds the amount of the indebtedness.

However, it is apparent that if the plan were confirmed and carried out, the net benefit to Jerry Kahn could be several thousand dollars. (This renders the assertion that he is charging no fee in these proceedings somewhat specious.)

Many questions arise in the consideration of the amended plan including the patent conflict of interest between the debtors and their attorney, Jerry Kahn, particularly in connection with the agreement for purchase which is so much a part and parcel of these proceedings. It is questionable whether the debtors will be able to live on their combined gross income of $600 per month (including tips) and pay the unsecured creditors who have not been made part of the plan. (It should be noted that the $155 in rent being paid to Mrs. Lockwood's parents for rental of the trailer is about one-half of the real rental value of that unit and there is no evidence that the debtors can live in those circumstances indefinitely.) Finally, there are several small but significant discrepancies between the evidence presented at the § 341 hearing and at the hearing

---

1. The original terms of the first mortgage were monthly payments of $257.92 with interest at the rate of six percent per annum. Apparently, on February 14, 1975, there was a modification of that mortgage which increased the interest rate to eight percent per annum and the monthly payment to $300 by the original mortgagors, but that modification had never been recorded and had either been lost or destroyed. However, the debtors were treating the modification as binding upon them and were making payments in accordance with the amortization schedule relating to the modification of mortgage and received in evidence as Debtors' Exhibit No. 2.

before the court.[2]  However, there are much more fundamental defects in the amended plan which would remain even if the purchaser of the home were someone other than the attorney representing the debtors and if the discrepancies in testimony did not exist.

11 U.S.C. § 1325 requires the court to confirm a plan which meets the provisions set forth. The debtors contend that the plan must be confirmed, and in particular, argue that the objection of the first mortgagees is of no effect because the plan comes within the provisions of § 1325(a)(5)(B), whereby a plan may be "crammed down" on an unconsenting secured creditor.

A possible point on which the plan does not comply with the Code is under § 1325(a)(5)(B)(ii) which requires that the value to be distributed to the unconsenting secured creditor under the plan on account of the claim of that secured creditor is not less than the allowed amount of such claim. The secured creditors' claim is approximately $29,000 and the proposed plan would leave those creditors with a mortgage having a principal balance of the same, approximately $29,000, payable in installments of $300 per month, with an interest rate of eight percent per annum. The debtors presented a mortgage broker as an expert witness as to the present value of mortgages and he testified that in order for a mortgage carrying interest at the rate of eight percent per annum and payable in installments of $300 per month to have a present value of $29,000, the principal amount of that mortgage would have to be $58,000.

However, the court need not determine whether or not the payment of the arrearages plus giving a mortgage of $29,000 is in fact the equivalent value of the claim of a mortgagee for a mortgage of $29,000 that is in default and entitled to be accelerated. The plan fails to comply with the good faith requirement of § 1325(a)(3) in that the plan does not provide any rehabilitation of the debtors. They, in effect, had lost their real property prior to the filing of these proceedings and are not being reinstated in ownership or possession since, as part of the plan, they have agreed to transfer their interest in the real property to their attorney. Their consumer debts have not been dealt with in any manner whatsoever under the plan, leaving them absolutely no better off than they were before the jurisdiction of this court was invoked. The debtors have been persuaded to opt for an illusory benefit, while the only real benefit goes to the new purchaser.

In fact, the Lockwoods could be worse off under the plan, in that they would lose any chance to realize the benefits of a foreclosure sale of the property in the event that the proceeds of said sale were sufficient to satisfy both mortgages and provide an excess for the Lockwoods. If Mr. Mayhew, the appraiser, is correct, that excess could be more than $5,000. Under the agreement for purchase with Kahn, the Lockwoods will ultimately realize only $750 for their loss of equity. Likewise, there is little risk of a deficiency from which this plan would protect them. In stating the foregoing, the court is not unmindful that it may be unlikely that the Lockwoods would realize any cash proceeds from foreclosure and that the possibility exists that there would be a deficiency judgment against them as to the claim of the second mortgagee in the foreclosure.

Furthermore, the court is of the opinion that chapter 13 was not intended to provide a method to "cram down" a defaulted and accelerated mortgage on the mortgagee

---

**2.** At the § 341 hearing (page 9 of the transcript of that hearing) attorney Kahn stated that Mr. Lockwood found a purchaser and "moved people onto the property". At the hearing before the court on July 7, 1980, it was revealed that attorney Kahn had actually negotiated with the tenants (Gildays) and entered into the lease with them.

At the § 341 meeting (page 11 of the transcript) Mr. Lockwood testified that he was charging the tenants $300 per month. At the hearing before the court, it was revealed that Mr. Kahn was collecting the rent and that Mr. Lockwood was confused as to the actual terms of the lease regarding payment of rental and fixing the house by the tenants (see Debtors' Exhibit No. 3).

where nothing else was being accomplished in the chapter 13 proceeding. If such a result were intended, then mortgages of persons having regular income would be of uncertain value to mortgagees and the whole concept of mortgage lending as we understand it would be substantially altered. Any time a person having regular income wanted to sell real property on which there was a existing mortgage, without disturbing that mortgage, that person could simply fail to make his mortgage payments, sell the property subject to the mortgage, and at the eleventh hour bring a chapter 13 proceeding, promulgating a plan which did nothing but reinstate the existing mortgage for the benefit of the purchaser of the property, and to the detriment of the mortgagee, in derogation of his contract. This would be true even if the prospective purchaser were a disinterested third person and not the attorney for the debtor. If such a scheme were viable under chapter 13, even a provision in a mortgage that the entire principal balance becomes due upon sale of the property could be obviated and the mortgage reinstated in the event of sale under a carefully conceived chapter 13 plan. It is apparent how many abuses and sharp practices this might encourage.

Even if the plan did not fail under the good faith clause of § 1325(a)(3), it must fail because it is contrary to the statutory design and purpose of chapter 13, which is to encourage individuals with regular income to repay their debts. See *In re Seman,* 4 B.R. 568, No. 80B 20163 (U.S. Bankruptcy Court, S.D.N.Y., filed June 6, 1980), CCH Bankruptcy Law Reports, ¶ 67,-455. Under the proposed plan, the senior secured creditor would be deprived of a valuable right, without any corresponding assistance to the debtors, either in repaying their debts or in getting a fresh start.

Both Jerry Kahn as buyer, under the agreement for purchase, and the Gildays, under their lease with Kahn, have taken their positions subject to the pending foreclosure action and these proceedings. Any equitable right that either Kahn or the Gildays might have as a result of their agreements could be asserted and litigated in the state court foreclosure proceedings.

It is, therefore, ORDERED and ADJUDGED that confirmation of the amended chapter 13 plan be, and it is hereby, denied.