**In re James R. ANDREWS, Jr., Debtor.**

**Bankruptcy No. 81-00624.**

United States Bankruptcy Court,
D. South Carolina.

Oct. 29, 1981.

---

Charles S. Bernstein, Bernstein & Manos, P.A., Charleston, S.C., for debtor.

James E. Chellis, Chellis & Mortimer, P.A., Summerville, S.C., for creditor.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

The debtor, James R. Andrews, Jr., d/b/a Drainland Feed and Seed a/k/a A & A Produce (hereinafter "Andrews"), having

filed a petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. § 1301 *et seq.*) has proposed a plan of repayment (hereinafter "the plan"). Creditors object to the confirmation of the plan.

## FACTS

At the time of the filing of his petition for relief, Andrews and Marion Curtis Ambrose (hereinafter "Ambrose") were engaged in business as partners in a partnership known as Drainland Feed and Seed a/k/a A & A Produce. As such, they purchased a 20.63 acre tract of land from Elliott M. Mellichamp on April 22, 1977. On the date of sale, they executed and delivered a $51,575 promissory note and a first purchase money real estate mortgage to Mr. Mellichamp who recorded the mortgage on the same day.

The debtor failed to make his January 1981 payment as required by the note. However, there was no declaration of default and acceleration of the note until May 1981—after the petition for relief was filed. On May 9, 1981, the note and mortgage were assigned by Elliott M. Mellichamp to Elliott M. Mellichamp, Jr. and Mrs. Harry M. Locklair, the objecting creditors in this case, after they had actual notice that the Chapter 13 petition was filed and the default in payment had occurred.

In his proposed plan, the debtor made provisions for the sale of the land to T. W. Salisbury who agreed with the debtor that, upon approval of the plan, Mr. Salisbury would take title to the land, bring the notes current by immediately paying all arrearages thereon, and continuing payments on the three notes covering the property, including the note held by the assignees having a current balance of $51,768.08.[1] In addition, Mr. Salisbury agreed to pay the debtor,

upon approval of the plan, the sum of $7,500 out of which the debtor shall pay attorney fees of $1,500; the remainder is to be used for the purchase of new inventory for his business.

To implement the sale, Ambrose, the other partner, has agreed to release his lien[2] on the property in exchange for Andrews' awarding him full title to a tractor and attachments purchased and used by the partnership and subject to the liens of First National Bank of Holly Hill and the Small Business Administration.

The plan further provides for the payment to the Chapter 13 trustee of $225 per month for a period of 48 months. From these payments, $22.50 per month will be disbursed to the trustee for his expenses and commission, and the remainder, totalling $9,720, will be used to make tax payments, payments to judgment holders, and payments to unsecured creditors on a *pro rata* basis.

The creditors object to the proposed plan on the grounds: (1) that a Chapter 13 plan may not be used to "cram down" a defaulted and accelerated mortgage;[3] and (2) that a person other than the debtor may not cure the default on a long term secured claim.

## ISSUE

The issue in this case is whether the debtor's proposed plan meets the confirmation requirements of 11 U.S.C. § 1325.

## DISCUSSION

11 U.S.C. § 1324 allows a party in interest to object to the confirmation of a debtor's proposed plan if it does not meet the requirements of Chapter 13.

---

1. The other two mortgages covering the property are held by First National Bank of Holly Hill and Henry Moody in the amount of $37,416.07 and $6,020.48, respectively.

2. This lien was created by a contract of sale for the land in which Ambrose agreed to sell his interest in the land to Andrews and retain a lien on the land.

3. Since there was no declaration of default or acceleration before the debtor's petition in bankruptcy was filed, this court needs not consider whether 11 U.S.C. § 1322(b)(5) allows the deceleration of a mortgage which was accelerated after default.

Under the plan, a person other than the debtor would, pursuant to 11 U.S.C. § 1322(b)(5)[4], cure the promissory note default and continue the scheduled payments. The effect of the plan is that the mortgagee must allow a person other than the debtor to cure the default; it forces the mortgagee to accept an assignment, and to receive payments, from a person other than the original mortgagor—a third person whose credit had not been relied on by the mortgagee and whose future earnings are not subject to the trustee's supervision and control.

The court in *In re Lockwood*, 5 B.R. 294 (Bkrtcy., S.D.Fla.1980), refused to confirm a Chapter 13 plan which called for a person other than the debtor to acquire title to the debtor's residence, cure the default, and maintain payments to the mortgagee, because such a plan was "contrary to the statutory design and purpose of Chapter 13 which is to encourage individuals with regular income to pay their debts." *Id.* at 298.

The debtor attempts to distinguish *Lockwood* on the ground that, unlike the *Lockwood* plan, this plan's provisions that another person shall assume the debtor's obligations under the note and mortgage will aid the debtor's rehabilitation since it will provide fresh capital for his business. That distinction is not well taken because in the instant case, the debtor *himself* is not planning to pay his debts—he is not curing his default; someone else is.

The debtor's proposed plan violates the intent and spirit of § 1322(b)(5) and is not compatible with the "fresh start" philosophy of the Bankruptcy Code.

## CONCLUSION

This plan which allows a third person to assume the debtor's right to cure the default of the long-term obligation does not come within § 1322(b)(5), and is contrary to the purpose and spirit of Chapter 13. It should not be confirmed.

## ORDER

Therefore, IT IS ORDERED, ADJUDGED AND DECREED THAT confirmation of the debtor's plan be denied.

---

4.  § 1322(b)(5): "Subject to subsections (a) and (c) of this section, the plan may—notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."