## In re Fred SAFKA, Patricia Safka, Debtors.

### Bankruptcy No. 81–00204.

United States Bankruptcy Court,
D. Vermont.

March 4, 1982.

Richard L. Hill, William May, Barton, Vt., for Willoughby Beach, Inc.

George Brooks, Norwich, Vt., for Vermont Dept. of Taxes.

Douglas J. Wolinsky, Richmond, Vt., trustee, pro se.

Mark L. Zwicker, Brattleboro, Vt., for Northeast Well Drilling.

Thomas Little, Burlington, Vt., for Medical Center Hospital of Vermont.

## MEMORANDUM AND ORDER AS TO CONFIRMATION

CHARLES J. MARRO, Bankruptcy Judge.

The hearing on Confirmation and the Objections of Willoughby Beach, Inc., and the Vermont Department of Taxes to the Plan in this Chapter 13 Proceeding was held after notice.

From the testimony adduced at the hearing and the records in the case, the following Facts have been established:

The Debtors filed a Petition for Relief under Chapter 13 of the Bankruptcy Code

on October 19, 1981 with a Plan under which they proposed to pay the Trustee $4,000.00 monthly with the income to be derived from a business entity known as Five-A, Inc., in which Debtor Patricia Safka is the sole stockholder, and income was to be derived from personal services rendered to Five-A, Inc., and rent to be received by them from a lease of their property to Five-A, Inc.

On January 29, 1982 the Debtors filed an Amended Plan which provided for settlement of unsecured claims amounting to $24,151.00 for the sum of $6,317.85. This payment of $6,317.85 is to be made with the proceeds of a loan received by the Debtors from Emily Warnock who is the mother of debtor, Patricia Safka, and from income derived from the date of the filing of the Petition until confirmation of the Plan.

Under the Plan the Debtors further propose to make up arrearages on the first mortgage against their property held by Willoughby Beach, Inc., by the payment of $835.83 monthly to the Trustee over a period of 36 months. The second mortgagee, Emily Warnock, will receive no payment on her mortgage of $33,000.00 until the Plan is terminated.

The judicial lien creditors with claims of $44,005.00 will be paid $1,222.32 a month over the Plan period. In summary the Debtors propose to complete the Plan by a monthly payment of $4,078.20 to the Trustee plus the additional sum of $1,115.70 from May through October of each year.

Willoughby Beach, Inc., is one of the objecting creditors and is secured by virtue of a first mortgage on the real estate owned by the Debtors in the sum of $131,140.30 and the State of Vermont, Department of Taxes, the other objecting creditor, is secured by virtue of a judicial lien for meals and rooms, withholding and property transfer taxes in the sum of $25,662.91.

The Debtors own lakeshore property in the Town of Westmore, Vermont, consisting of 15 acres of land, the Willoughvale Inn including a restaurant and 15 cabins. The restaurant equipment and inventory are owned by Five-A, Inc., in which Patricia

Safka is the sole stockholder. Her husband oversees the operation of the restaurant. They purchased the property in 1978 after leasing it the previous two years.

For the fiscal year beginning August 1, 1979 through July 31, 1980, Five-A, Inc., d/b/a Willoughvale Inn had gross sales of $317,123.00 and a net profit of $819.00. For the period from August 1, through May 31, 1981, this corporation had gross sales of $195,294.05 and a net loss of ($7,045.96).

The Debtors have had financial problems since 1977 which occurred originally because of absentee management. In addition, they ran over their budget and they had to expend considerable sums of money on repairing the foundation of the Inn and the water system. As a result, they have had a serious cash flow problem.

The charter of Five-A, Inc., has been revoked and the Debtors are in the process of having it reinstated. During the months of July, August, September and October, 1981, Five-A, Inc. failed to file returns for rooms and meals taxes. The Debtors filed no personal income tax returns for 1978, 1979 and 1980. Because of the failure to file the necessary tax returns the Corporation was enjoined from doing business and was later authorized to continue business under a conditional license with the requirement that returns for rooms and meals taxes be filed on a weekly basis.

The Debtors anticipate a turn-around in the restaurant and bar business operated by Five-A, Inc., and, as a result, they are confident that with a decrease in expenses and improvement in business they can generate sufficient income from the services rendered by Debtor Fred Safka in the operation of the restaurant and bar and from the rental paid by Five-A, Inc., to meet the monthly payments of $4,078.20 plus the additional sum of $1,115.70 during the months of May, June, July, August, September and October to consummate the Plan over a three-year period.

This confidence was confirmed by their financial consultant, Michael Rice, who expressed a very positive opinion as to their ability to make the necessary payments.

## CONCLUSIONS

■ Chapter 13 is designed to facilitate adjustments of debts of individuals with *regular income* through extension and composition plans funded out of future income, under the protection of the Court. 5 Collier 15th Edition, pages 1300–20.

■ This presumes that the Plan will be implemented out of the income of the debtor. In the instant case the Debtors propose to settle unsecured claims of $24,151.00 for the sum of $6,317.85 with the proceeds of a loan from the mother of debtor, Patricia Safka. This arrangement is contrary to the spirit of Chapter 13. *In re Andrews,* 15 B.R. 717 Bkrtcy.; *In re Lockwood,* 5 B.R. 294 Bkrtcy.

It follows, therefore, that the Plan is ill conceived. Further, this Court is not convinced that the Debtors, judging from the past history of the business conducted by Five-A, Inc., will have sufficient income to consummate the Plan. They furnished as an Exhibit a Statement of Income and Expenses of Five-A, Inc., from June 1, 1981 to September 20, 1981. This shows a net profit of $40,571.78 during a period of less than three months. It is not audited and its credibility is questioned, especially in view of the fact that the statement includes as expenses sales taxes which the Court assumes are taxes on meals and rooms of $4,953.63. Yet, the undisputed evidence is that for the months of July, August, September, and October, 1981, Five-A, Inc., failed to file any returns with the Vermont Tax Department. It would appear that if the corporation had a profit of $40,571.78 it would have filed returns and paid the taxes.

The Debtors have also submitted as an Exhibit projections showing income and expenses for the months beginning February 1, 1982 through January 31, 1983. A profit is shown for every month ranging from $191.00 to $23,634.00. This Court is not impressed with projections, especially in view of their history in other cases which show them to be overly optimistic in favor of the debtors.

The history of Five-A, Inc., does not warrant the conclusion that its business will produce enough income for the Debtors to implement their Plan.

■ Before the Plan under Chapter 13 may be confirmed, it must also pass the so-called "best-interests" test under which the value of the property to be distributed in settlement of each allowed unsecured claim must not be less than the amount that would be paid if the Estate of the Debtor was liquidated under Chapter 7. 5 Collier 15th Edition 1325–10.

At the hearing there was no testimony introduced by the Debtors to establish that the Plan met this test. Without such testimony the Court is unable to determine whether the Debtors have met this requirement for confirmation. This Court is not satisfied that the Plan should be confirmed.

## ORDER

In view of the foregoing,

IT IS ORDERED that the Plan submitted by the Debtors under Chapter 13 of the Bankruptcy Code is NOT CONFIRMED.