Jones, Oliver B., J.
This was an action below to compel the specific performance of a contract for the purchase of real estate. Defendant refused to accept a deed and pay the purchase price, contending that the title of plaintiff to the property was “defective, unmarketable and not good.”
On careful consideration of the pleadings there appears to be no issue raised between the parties on the facts, and they seem to agree in all matters as to the state of the records relating to plaintiff’s title, and to differ only as to the law and the legal effect of these records.
A demurrer to the reply was filed by defendant, and a motion for judgment on the pleadings was filed by plaintiff. This demurrer and motion were heard together by the court. ' The demurrer was overruled, and the motion for judgment was granted and judgment entered for plaintiff. The journal entry overruling the demurrer to the reply uses these words as preliminary to the judgment, “The defendant not desiring to plead further,” as though some further pleading might be expected from defendant. Any new matter alleged in the reply is deemed to b’e controverted without any further pleading from defendant. (Section 11329, General Code.) If any distinct issue of fact was raised by the pleadings it would require the introduction of testimony by plaintiff to maintain such *337 • issue upon her part to entitle her to judgment, and it would be error to enter judgment on the pleadings without the necessary evidence. But, as we have stated, the parties seem to have agreed upon the facts at the hearing below, and the trial court has so treated it, as shown in the opinion, which is reported in 15 N. P., N. S., 208. The deeds upon which plaintiff’s title rests, the sufficiency of which are disputed by defendant, while not embodied in the bill of exceptions are found with the papers, and, if they can be considered, show that there can be no dispute as to the facts.
If we are wrong in this assumption, and the defendant makes any dispute as to essential facts, then she would be entitled to a new trial. From the argument before us, however, we understand that counsel on both sides are agreed as to the facts, and therefore we proceed to consider the law.
The duty of the court is fairly set out in the three propositions of the syllabus in City of Tiffin v. Shawhan, 43 Ohio St., 178, as follows:
“1. The-duty of a court of equity to decree specific performance of a contract to convey real estate, can not be determined by any fixed rule, but depends upon the peculiar facts and equitable considerations of each case, and rests in the sound discretion of the court, guided and regulated, however, in the exercise of that discretion, as far as may be, by precedent and established practice.
“2. If a contract for the purchase and conveyance of land is in all respects fair and free from ambiguity, and its enforcement as against the purchaser will vest in him a marketable title, the court has no legal discretion to refuse its enforcement.
*338 “3. If the specific performance of such a contract would be harsh, oppressive, or inequitable in its consequences, or would leave the purchaser witn a doubtful and unmarketable title, the court, in the exercise of its discretion, will refuse to decree-its performance, as no man will be compelled to accept a doubtful title.”
The question for the court to determine, therefore, is whether or not the title offered by plaintiff is a marketable title.'
• The objections made to plaintiff’s title are that there are five mortgages on same, recorded in 1875 and 1876, made by P. W. Hill who .was then the owner, and that they have never been cancelled of record.
It appears from the recital of two deeds, made by P. W. Hill, per master commissioner, under which plaintiff claims, that a proceeding was had in the common pleas court against said' Hill, in which the owners of four of these mortgages were parties, and under which said four mortgages were foreclosed, and a sale of said premises was had and confirmed by said, court and the master commissioner was ordered to convey the premises so sold to the respective purchasers in fee simple.
The record of this foreclosure proceeding in the common pleas court was destroyed by the courthouse fire of 1884, and the only evidence of same now of record is contained in the master commissioner’s deeds, which by virtue of Section 12349, General Code, are prima 'facie evidence of the legality and regularity of such sale and of the correctness of the proceedings in the action or proceeding.
*339 If anything further is necessary to validate the title to said lands in the purchaser under said sale, it is found in Section 15091-1, General Code (102 O. L., 460), which is as follows:
“That in all cases where there shall exist any defect in the record of the title to any of the lands in any county, in the state of Ohio, which defect is due to the total or partial destruction of a deed, plat or court record of such county by fire,, riot or civil commotion, and more than twenty-one years have elapsed since such total or partial destruction, the title to any such lands is hereby made valid in the owner thereof as against any defect in the record of the title thereto, resulting from such total or partial destruction of the deed, plat or court record of said county, by such fire, riot or civil commotion, provided, that nothing herein contained shall affect litigation now pending in any of the courts of this state, and any person or persons adversely claiming title thereto, shall begin proceedings within one year from the taking effect of this act, if not already barred by limitation or otherwise.”
It must be conceded that the sale of these premises in foreclosure carried with it all the interests of all the parties to the suit. It is an elementary proposition that when property is sold in a judicial proceeding the sale vests title in the purchaser free from all rights of all parties to the action. Lessee of Fosdick v. Risk, 15 Ohio, 84, and Freeby v. Tupper et al., Id., 468.
The first four mortgages made by Hill must therefore be deemed satisfied.
*340 When the fifth mortgage, to one Henderson, was made by Hill, this foreclosure suit had been pending more than nine months, and any rights obtained by Henderson under this mortgage would, under the doctrine of lis pendens, be dependent upon the result of the foreclosure suit. The sale afterwards had thereunder would vest the title entirely free from any lien because of the mortgage to Henderson. Heirs of Ludlow v. Kidd’s Exrs., 3 Ohio, 541, and Bennet’s Lessee v. Williams, 5 Ohio, 461.
It is contended, however, by counsel for defendant, that Section 8552, General Code, provides for the cancellation of the mortgages satisfied by the foreclosure proceeding by an entry on the record thereof by the clerk 'of the court. This section is merely directory. Such an entry is in effect simply a reference to the court proceedings, and while it should be observed, because it is a great convenience to examiners of the records, it is not an essential one to effect a complete satisfaction of the mortgage or to remove it as a cloud upon the title when a proper foreclosure sale has been had. If it is desired as a matter of reference; no doubt an order could even now be obtained from the common pleas court, under the foreclosure case, for the clerk to make such entry on the record of the mortgages included in the foreclosure. The further fact that all of said five mortgages had been past due for more than thirty years, without effort on the part of the mortgagees to assert any claim thereunder, would in itself indicate that they no longer constitute a cloud upon the title.
*341 The most serious question, however, is raised by the defective character of one of the master commissioner’s deeds — the deed to William J. Littell, trustee for the Wildey Building Association, for part of said premises. This deed failed to use the word “heirs” in either the granting or habendum clause, to indicate a perpetuity, and instead used the word “successors” as though the grant were made to the building association instead of to Lit-tell, Trustee.
There can be no dispute that the general rule in Ohio, as a common law, is that the word “heirs” or other appropriate words of perpetuity should be used to pass the fee simple estate; and that the omission of such word in a deed to a natural person in the granting and habendum clauses vests only a life estate in the grantee. (Ford v. Johnson, 41 Ohio St., 366.) There are, however, well-established exceptions to this rule: Railway v. Bosworth, 46 Ohio St., 81, 85, where the grant was to a corporation aggregate and was sustained as carrying a fee without the use of the word “heirs” or “successors;” and Brown v. National Bank, 44 Ohio St., 269, 276, where a mortgage made on an Indiana form without the use of the word “heirs,” conveying Ohio real estate, was construed to pass an estate in fee simple. An exception has also been held where the conveyance is made to a trustee where the nature of the trust would require that the legal estate conveyed be one in fee simple. Young v. Bradley, 101 U. S., 782, 785; Young v. Commissioners of Mahoning County, 53 Fed. Rep., 895, 899, and Williams v. Mears, 2 Disney, 604, 616.
*342 In the deed under consideration it is recited that the master commissioner was ordered by the court to convey this title in fee simple. The title held by Philip W. Hill, the mortgagor,' was a title in fee simple, and under Sections 11693 and 11694, General Code, it was the duty of the master commissioner to execute such a conveyance of the estate as would convey the interest of P. W. Hill as it existed at the time of the sale, or was acquired thereafter, and vest such estate in .the purchaser. If the master commissioner had failed to execute any deed, it could still no doubt under the order of the court have been executed by the sheriff. And if a defective deed were executed, it could be corrected' by the master, or a new and proper deed could be executed to take its place.
Giving to the contention of the defendant below its full weight, and conceding for the purpose of argument that this deed did only convey a life estate, then where would the remainder of said title have vested ? Clearly, in the original mortgagor or his heirs. But he had conveyed it by these mortgages in fee simple, and his fee simple title was ordered sold in the foreclosure proceeding, and his heirs are therefore estopped from setting up any claim as against the purchaser. There could be no claim by Hill or his heirs as against this deed.
It will therefore be seen that the only possible claims that could be made against plaintiff’s title, because of the defects set up by defendant, would be claims under the four mortgages which had been foreclosed and the one mortgage which was made during the pendency of the foreclosure proceedings, and the 'claim which defendant urges might be made *343 by an owner of the fee against whom the fee simple title had been ordered sold, who, defendant claims, might be entitled to an interest in the remainder because of the. form of conveyance executed to the purchaser under the foreclosure sale. We have seen that outside of the statute of limitations, which itself would probably prevent any such claim, no such claims could possibly be successfully maintained. And while a court should refuse to compel a purchaser to accept a doubtful title, which might expose him to litigation, even though he might be successful in such litigation, we find that this is not such a title, but that it is a valid and marketable title.
In the state of the records in this county, because of the courthouse fire, it is probable that there are but very few titles that are perfect on the records in all respects; and, while an examiner of titles might desire to have every possible obstacle removed, we can not hold that such defects as are urged against plaintiff’s title here render it unmarketable, as there is no probability of any effort to assert a claim against it.
It is not necessarjl to further discuss the questions raised, because a full discussion is given in the able opinion of the court below, which seems to cover the entire ground.
Judgment is therefore affirmed.

■Judgment affirmed.

Swing and Jones, E. H., JJ., concur.