In the Matter of Gerald W. TAYLOR Anna M. Taylor, Debtors.

The PROVIDENT BANK, Plaintiff,

v.

Gerald W. TAYLOR, Anna M. Taylor, Defendants.

Bankruptcy No. 1-82-0415.
Adv. No. 1-82-0415.

United States Bankruptcy Court, S.D. Ohio, W.D.

Feb. 14, 1983.

Charles G. Coulson, Jr., Cincinnati, Ohio, for plaintiff.

Peter J. Strauss, Cincinnati, Ohio, for defendants.

FINDINGS OF FACT, OPINION AND
CONCLUSIONS OF LAW

RANDALL J. NEWSOME, Bankruptcy
Judge.

This Chapter 11 proceeding is before the Court pursuant to a complaint for relief from the automatic stay by which the Provident Bank (hereafter referred to as "bank") seeks to proceed with a real estate foreclosure action against the debtors in state court. The trial on this Complaint commenced on December 9, 1982, and was reconvened on December 12, 1982 and January 7, 1983 to allow the introduction of additional evidence.

On January 19, 1983 the debtors filed an application for approval to lease a portion of one of the three parcels of real estate here in question. Given the urgency of the prospective lessee's occupancy requirements, and to avoid needless additional controversy among the parties, the Court issued a decision on this dispute from the bench on January 26, 1983. The Court hereby submits its Findings of Fact, Opinion and Conclusions of Law. To the extent that the Court's January 26, opinion differs from the following findings and conclusions, the latter shall govern.

*Findings of Fact*

1. Prior to the filing of their November 13, 1981 Chapter 11 petition, the debtors were part owners in a business known as Decorative Imports & Transfer, Inc. In October of 1980 the debtors purchased real estate in which to house this business.

That property is located at 1217 Ellis Street in Cincinnati, and was previously the site of a manufacturing facility owned by Leggett & Platt, Inc. Debtors paid $450,-000.00 for the property. A portion of the parcel was subsequently sold for $155,-000.00.

2. In an effort to keep their business afloat, the debtors, along with the co-owner of Decorative Imports, Mr. Orville Wright, obtained a series of loans from the bank. On October 16, 1980 the bank issued a loan for $587,160.34 which was secured by a second mortgage on the debtor's Ellis Street facility, a 189.9 acre farm in Brown County, Indiana, and personal residence, as well as second mortgages on real estate owned by Orville Wright. (Plaintiff's Exhs. 1–7; Doc. 12, Adversary Case File No. 1–82–0415). As of December, 1981, the first mortgages on debtors' three parcels totalled approximately $104,500. (Debtors' Statement of Liabilities, filed December 2, 1981).

3. Sometime after October 16, 1980 but prior to November 13, 1981, Decorative Imports ceased to do business. After failing to receive payment on the balance of their October 16, 1980 note pursuant to its demand, the bank instituted foreclosure proceedings in state court upon all five parcels of real estate. The two parcels owned by Orville Wright were sold at foreclosure sale, but the foreclosure sale scheduled for the debtors' property was automatically stayed by the November 13, 1981 filing of their Chapter 11 petition.

4. The parties have stipulated that as of November 13, 1981, the total amount of principal and interest due and owing on the bank's notes was $527,138.60. If post-petition interest were allowed at the contract rate, the total amount due and owing on the bank's notes as of December 9, 1982 was $602,445.79.

5. Much of the evidence presented at trial concerned the fair market value of the debtors' three parcels of real estate securing the bank's notes. The parties sharply disagree over the value of the Ellis Street property. This 2.77 acre parcel consists of adjoining concrete and brick buildings, as well as a 101.5′ × 162.5′ parking lot. The brick building is about 50 years old and has approximately 95,000 feet of floor space. Based on the photographs (Exhibits 14 through 21) and other evidence, the condition of this building can only be described as extremely poor. The extensive leaks in the roof have resulted in the buckling of the wood block floors. The basement is damp and its ceilings are low. Many new windows, a new roof, and extensive repairs and clean-up would be required before this building could be used as a manufacturing

facility. Its disrepair also limits its utility as a warehouse. The concrete block building is approximately 20 years old and consists of approximately 22,000 square feet of floor space. No photographs of this building were entered into evidence, but the testimony indicated that it is in far better condition than the brick building. However, it has some leaks in its roof and is in need of some repairs.

6. The Brown County, Indiana farm was purchased by the debtors for $75,000.00 in 1974. The debtors have divided the property into four parcels, and have listed all four at a total asking price of $194,000.00. No offers on these parcels have yet been received. The Court notes in passing that Schedule B-1 of the debtors' bankruptcy petition lists the property as having a value of $150,000.00.

The land is too hilly to be considered prime for farming, and is too far from Cincinnati to be convenient for a commuter. Although the farm has a 2500 pound tobacco base, the bulk of the acreage is suitable only for grazing. Much of it is covered over with brush. The small farm house, the barn, and the other out-buildings on the land are not in the best condition.

7. William D. Schnicke and David Middendorf, both assistant vice presidents of the bank, as well as Stanley S. Strauss, an expert appraiser and real estate broker with Espy & Strauss, Inc., testified as to the fair market value of the debtors' property. Plaintiff also introduced into evidence formal real estate appraisals of the farm and the Ellis Street property prepared by Strauss. (Plaintiff's Exhs. 22 and 25). Based upon the highest and best use of the parcels, these witnesses valued the Ellis Street property at $240,000, the farm at $116,000.00 and the Taylors' personal residence at $150,000.00.

The debtors' evidence on this issue consisted of testimony by Mr. Taylor and Mr. John Allman, the real estate broker retained to sell the Ellis Street property. Debtors also introduced testimony by Steven Hemberger of Ecolo Fibers, Inc., a prospective lessee of a portion of the concrete block building at the Ellis Street location. While Mr. Allman valued the Ellis Street property at $320,000.00, his method of appraisal is not entirely clear. The reliability of his valuation is further eroded by his admission that substantial improvements and alterations will be required before the buildings can be sold or leased, that the real estate market is in a depressed state, that the Ellis Street property is depreciating in value, and that he has failed to receive a single offer on the property in the one and a half years it has been listed.

The debtors offered no expert testimony as to the value of the Indiana farm or the debtors' personal residence. Based upon the sale of a neighbor's house in 1978, Mr. Taylor believes that the fair market value of his residence is $165,000.00.

8. Upon this record, the Court finds by a preponderance of the evidence that the fair market value of the Ellis Street property is $240,000, the fair market value of the Indiana farm is $116,000.00 and the fair market value of the debtors' personal residence is $150,000.00. Since the total value of all three parcels is $506,000.00 and the first and second mortgages on all three exceed $600,000.00, the Court further finds that the debtors have no equity in these parcels.

9. The debtors have failed to establish by a preponderance of the evidence that the property in question is necessary to an effective reorganization under Chapter 11. The debtors' former business has long since ceased to operate, and there has been no suggestion that they are attempting to revive it through a plan of reorganization. Nothing presented to the Court in any way indicates that the debtors intend to engage, or have ever been engaged, in the business of real estate leasing or property management. Since the debtors have already relinquished their farm to the bank, the Ellis Street property is the only parcel which could be utilized for this purpose. The success of the debtors' January 18, 1983 plan of arrangement hinges almost entirely upon the ability to lease or sell this property. Given its poor condition and the debtors' financial inability to restore it, their hope of

rehabilitation through this means appears highly unrealistic.

10. For the same reasons as noted above, the Court finds that the debtors have failed to establish by a preponderance of the evidence that the bank's interest in the property is adequately protected. Putting aside the lack of an "equity cushion" in the property, the debtors have failed to offer, or even establish their ability to offer, the alternative forms of adequate protection set forth in 11 U.S.C. § 361 or contemplated by that provision. While the debtors did find a lessee for the newer, concrete block building on the Ellis Street site, the payments from that lease would not be sufficient to adequately protect the bank's interest.

## Opinion

The facts of this case present an unfortunate but all too common scenario. In an attempt to revive a failing business, the debtors mortgaged a substantial portion of their assets to obtain additional operating capital. The business finally collapsed, and the debtors filed their petition under Chapter 11 to stave off foreclosure sales of the property.

 However much we may sympathize with the debtors' plight, we are convinced that § 362(d)(2) was enacted to provide relief from the automatic stay to creditors under these circumstances. The legislative history of this section alone provides ample support for this conclusion:

"This section is intended to solve the problem of real property mortgage foreclosures of property where the bankrupt-cy petition is filed on the eve of foreclosure." 124 Cong.Rec. H 11,092–3 (Sept. 28, 1978) S 17,409 (Oct. 6, 1978)

Where the debtor has no equity in the property [1] the proposed reorganization is intended solely as a means of preventing foreclosure, and the property is deteriorating in both value and condition, the Courts have almost uniformly granted relief from the stay. The language of the Court's opinion in *In Re Saint Peter's School*, 16 B.R. 404 (Bkrtcy.C.D.N.Y.1981) has particular applicability to this case:

An "effective reorganization", ... requires more than an assertion that no reorganization is possible without the property, since all debtors who resist relief from the automatic stay obviously regard all their assets as indispensable for reorganization purposes. If all the debtor can offer in response to a request for relief from the automatic stay is the hope that sometime in the future some purchaser may appear on the horizon with a sufficiently substantial offer to support a plan of reorganization, it cannot be concluded that an "effective" reorganization is likely.

Given debtors' lack of equity in the property, as well as the illusory prospects for reorganization with or without the property, this Court has no alternative but to allow the bank to have the benefit of what it bargained for and to lift the automatic stay. *See also, In Re Country Club of Sarasota, Ltd.,* 13 B.R. 624 (Bkrtcy., M.D. Fla.1981); *In Re Racing Wheels,* 5 B.R. 309 (Bkrtcy., M.D.Fla.1980).

---

1. While the parties have not specifically addressed the question, this Court views "equity" under § 363(d)(2)(A) as consisting of the difference between the value of the property and all of the encumbrances against it, not merely those held by the party seeking relief. *See,* e.g., *In LaJolla Mortgage Fund,* 18 B.R. 283, 287 (Bkrtcy.S.D.Cal.1982); *In Re Gardner,* 14 B.R. 455, 456 (Bkrtcy.E.D.Pa.1981).

Since the debtors in this case have no equity in the property under any of the formulas proposed by the parties, this Court has no occasion to address the interesting question of whether post-petition interest accruing on the creditor's note and mortgage must be considered in determining the amount of the debtors' equity in the property. *See, In Re H & F Investment Company, Ltd.,* 9 B.R. 548 (Bkrtcy. N.D.Ohio 1981) (where equity was being eroded by daily interest costs, stay lifted); *In Re Mr. D. Realty Co.,* 27 B.R. 359 (Bkrtcy.S.D. Ohio, 1983) (Perlman, J.) (equity cushion must be reduced by the amount of interest which would accrue while property was listed for sale). *But cf. In Re American Mariner Industries, Inc.,* 10 B.R. 711 (Bkrtcy.C.D.Cal.1981) (undersecured creditor not entitled to interest on its secured claim under 11 U.S.C. § 506(b)).

The same conclusion must be reached under § 362(d)(1). Putting aside their lack of an "equity cushion", the debtors have failed to offer any additional payment or security which will adequately protect the creditor from further diminution in the value of its property interest and provide the "indubitable equivalent" of such interest. Their proposed plan of arrangement places the risk of its failure entirely upon their creditors, since it discloses no present means or method for its implementation. Payments to creditors hinge upon lessees and purchasers who do not presently exist. No payments are contemplated until such lessees and purchasers are finally secured. The burden of providing adequate protection is upon the debtors, and that burden has simply not been met. *See, In Re Binning*, 24 B.R. 328 (Bkrtcy., S.D.Ohio, 1982) (Perlman, J.); *In Re Monroe Park*, 17 B.R. 934 (D.C.D.Del.1982); *In Re Daws*, 13 B.R. 101 (Bkrtcy., D.Haw.1981).

### Conclusions of Law

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1471(b) and the December 23, 1982 General Order of the United States District Court for the Southern District of Ohio.

2. Plaintiff has established by a preponderance of the evidence that defendants have no equity in the property here in question under 11 U.S.C. § 362(d)(2)(A).

3. Defendants have failed to establish that the property in question is necessary to an effective reorganization under 11 U.S.C. § 362(d)(2)(B).

4. Defendants have failed to establish that the plaintiff's interest in the property is adequately protected under 11 U.S.C. § 361 and § 362(d)(1).

It is therefore ORDERED that the stay in effect pursuant to 11 U.S.C. § 362(a) is hereby lifted, and that the plaintiff be permitted to complete foreclosure proceedings on all of the property here in question. As to defendants' personal residence, however, the effect of this order is hereby STAYED for sixty days.

IT IS SO ORDERED.