In re John P. VIELAND, Jr. and
Elizabeth A. Vieland, Debtors.

John P. VIELAND, Jr. and Elizabeth A.
Vieland, Plaintiffs/Debtors,

v.

FIRST FEDERAL SAVINGS BANK, Citi-
corp Person-to-Person Financial Cen-
ter, John A. Donofrio, Treasurer of
Summit County, Roger Neverman, Je-
rome Holub, Trustee, Defendants.

Bankruptcy No. 583–1361.
Adv. No. 584–0046.

United States Bankruptcy Court,
N.D. Ohio.

June 6, 1984.

John A. Hallbauer, Cleveland, Ohio, for Roger F. Neverman.

Stephen D. Hobt, Cleveland, Ohio, for Citicorp.

John P. McGinnis, Bedford Heights, Ohio, for debtors.

Jerome Holub, Akron, Ohio, Trustee.

John R. Quine, Akron, Ohio, for First Federal Savings Bank.

John W. Sharp, Asst. Pros. Atty., Akron, Ohio, Treasurer of Summit County.

## FINDING AS TO SALE AND AS TO MOTION FOR RELIEF FROM STAY

HAROLD F. WHITE, Bankruptcy Judge.

This matter brings various parties before the court in a controversy over the disposition of certain real property. The property in question, hereinafter referred to simply as "the property" is located at 9945 Pebble Beach Cove, Remindersville, Ohio. It is the residence of the debtors, John P. and Elizabeth A. Vieland.

Roger F. Neverman was the highest bidder at a sheriff's sale of the property, which sale was held one day after the debtors filed their Chapter 13 petition. Mr. Neverman has filed a motion for relief from stay so that the state court which ordered the sheriff's sale may confirm said sale.

The debtors oppose Mr. Neverman's motion. They propose, instead, to sell the property to a third person, pay off the two mortgages encumbering the property with the sale proceeds plus additional funds, and maintain residence at the property by paying rent to the purchaser. Said purchaser, allegedly, will reconvey the property to the Vielands when they are able to obtain conventional mortgage financing.

Citicorp Person-to-Person Financial Center ("Citicorp") holds a second mortgage on the property. Citicorp opposes Mr. Neverman's motion because, if the sheriff's sale

is confirmed, it will receive less than the full amount of its claim. For this same reason Citicorp originally opposed the debtors' proposal to sell the property. Since the debtors offered to pay Citicorp in full with additional funds borrowed from Mr. Vieland's parents, Citicorp has withdrawn its opposition to the debtors' proposed sale.

Other parties also claim an interest in the property. First Federal Savings Bank holds a first mortgage on the property and the Summit County Treasurer holds a claim for taxes. These parties have remained above the dispute as their claims will be paid in full no matter how the property is sold.

Although generally not disputed, the factual background of this case is somewhat complex. This complexity is augmented by the procedural posture of the case. A proper understanding of these components is necessary to the resolution of this dispute.

## FACTUAL BACKGROUND

1. On February 22, 1983, Citicorp filed a complaint in foreclosure against the debtors in the Summit County, Ohio, Court of Common Pleas, case number CV83 20599. In June 1983, the Summit County Court granted Citicorp's complaint and ordered a foreclosure of the mortgages and a sale of the property. The property was appraised at $102,000 and set for sale on September 30, 1983. The state court specifically found that First Federal Savings Bank had a first mortgage securing the sum of $45,386.84 plus interest at 8 percent per annum from September 1, 1982 on the property and that Citicorp had a second mortgage securing the sum of $34,526.70 plus interest at 19.25 percent from September 17, 1982.

2. On September 29, 1983, less than 24 hours before the scheduled sheriff's sale, the debtors filed their petition under Chapter 13 of the Bankruptcy Code. On the morning of September 30, 1983, Citicorp made an oral application to modify the automatic stay under 11 U.S.C. section 362 of the Bankruptcy Code so that the scheduled sale could go forward. Citicorp claimed irreparable harm from the section 362 stay in the form of additional costs in the event the debtors were not able to consummate a plan. Counsel for Citicorp prepared an order, signed by this court, which provided:

It is, therefore, ordered that the automatic stay herein is hereby modified to permit the above-described Sheriff's sale to proceed as scheduled; provided, however, that the automatic stay shall remain in full force and effect to prohibit the entry of an order of confirmation of said Sheriff's sale until further order of this Court.

3. The sheriff's sale was held as scheduled on September 30, 1983. Roger F. Neverman submitted the highest bid, $85,100. Before the sheriff asked for bids, Mr. Neverman and all other persons present at the sale, were notified that the debtors had filed a Chapter 13 proceeding and that the confirmation of the sale was stayed pending further order of the Bankruptcy Court. Mr. Neverman paid a deposit of $5,100 to secure his bid.

4. On October 19, 1983, the debtors filed their first Chapter 13 Plan. The plan proposed to cure the defaults to First Federal Savings Bank and to Citicorp within the plan and to make regular monthly payments outside the plan. On November 9, 1983, Citicorp filed an objection to confirmation of the debtors' plan. The basis of Citicorp's objection was that its mortgage had been accelerated, the entire balance being due, that the plan provided for less than the allowed amount of its claim, and that the plan failed to cure the default within a reasonable time. Citicorp also stated that it intended its objection to apply to all future plans proposed by the debtors.

5. On December 15, 1983 the debtors filed an amended plan. This plan was essentially similar to the debtors' prior plan in its treatment of First Federal and Citicorp except that it listed much higher amounts then in default. St. Margaret's Parish Federal Credit Union filed an objection to this amended plan. The court scheduled a hearing on the confirmation

and the various objections to the debtors' amended plan for March 15, 1984.

6. The confirmation hearing was never held, however, because on January 30, 1984 the debtors filed a motion to sell the property. The debtors proposed to sell their property to Commodore Management Company for $85,000.

7. Citicorp objected to the debtors' motion stating that said sale would not pay its claim in full. Citicorp further stated that it objected to any sale of the property which would not allow its claim to be paid in full.

8. Mr. Neverman also objected to the debtors' motion. Mr. Neverman claimed that the debtors had no right to sell the property free and clear of his interest under either Ohio law or federal bankruptcy law. He also objected in that the price of the proposed sale was less than his bid at the sheriff's sale.

9. On March 15, 1984, the court denied the debtors' motion to sell the property. This denial was without prejudice and the court directed the debtors to file an adversary proceeding for the sale of the property.

10. On March 27, 1984, Mr. Neverman filed a motion for relief from stay to seek confirmation of the sheriff's sale. Both the debtors and Citicorp objected to Mr. Neverman's motion; both specifically objected that Mr. Neverman had no interest in the property which would entitle him to relief from stay.

11. On March 28, 1984, the debtors filed a complaint, adversary number 584–0046, to sell the property. They filed an amended complaint on March 30, 1984. In their complaint the debtors proposed to sell their property to Commodore Management Company for the sum of $88,000. The debtors stated that with the sale proceeds plus additional funds borrowed from family members, they would be able to pay the claims of the two mortgagees in full.

12. Citicorp answered by reiterating its position that no sale be confirmed which would not pay its claim in full. Mr. Neverman's answer reiterated his position that

the debtors were not entitled to sell the property. On May 14, 1984 an affidavit of one Jack Liebowitz, a general partner of Commodore Realty Associates, Limited, was filed. In said affidavit Mr. Liebowitz avers that he has agreed to purchase the property for $88,000 and that he intends to retain legal title "only until John and Elizabeth Vieland are able to obtain conventional mortgage financing at which time he will reconvey the above property to John and Elizabeth Vieland". The affidavit also states that Mr. Liebowitz has obtained a commitment for mortgage funds of $85,-000.

13. The debtors state that they will pay Commodore's mortgage payments of $926.70 per month and remain in possession of the property. They also state that with the sale proceeds, a $10,000 loan from Mr. Vieland's parents, and additional funds from Mr. Vieland's wages they will be able to pay Citicorp's claim in full.

14. Although the debtors indicate that they will be able to pay Commodore's monthly mortgage payments, they do not indicate if they will make payments to Mr. Vieland's parents on the $10,000 "loan". They also have failed to explain the difference, if any, between Commodore Realty Associates, Limited mentioned in Mr. Liebowitz's affidavit and the mortgage commitment letter from Citizen's Federal Savings & Loan Association and, on the other hand, Commodore Management Company mentioned in their brief and complaint. (This opinion will refer simply to "Commodore" without any effort to distinguish between the two entities.) The debtors have also failed to explain the terms under which they will regain title to the property. They merely state that they will execute an agreement specifying these terms.

15. At the present time, the debtors owe First Federal $52,923.60 plus interest at 8 percent from May 1, 1984. They owe Citicorp, on its second mortgage, $45,-551.91 plus interest at 19.25 percent from April 1, 1984.

## DISCUSSION OF LAW

The debtors and Citicorp assert that Mr. Neverman has no interest in the property which is entitled to protection under the Bankruptcy Code. Indeed, they implicitly question his standing to bring a motion for relief from stay. Mr. Neverman, for his part, asserts that the debtors are not entitled to sell the property free and clear of his interest. Thus, the court must first decide the parties' rights under the Bankruptcy Code with regard to the property.

## NEVERMAN'S INTEREST

When the debtors filed their petition Mr. Neverman had no interest in any of the property of the estate. Specifically he had no interest in the real property at issue. Any interest in the property which he now claims was acquired post-petition, at the sheriff's sale. Thus, in these proceedings, Mr. Neverman is not a "creditor" as that term is used under the Bankruptcy Code.[1]

Furthermore, Mr. Neverman has no claim[2] against either the debtor or the estate. He has no right to any payment of estate funds; nor does he have an equitable right which would give rise to a right to payment.

The fact that Mr. Neverman is not a creditor and does not hold a claim against the debtors does not necessarily mean that he is not entitled to relief from stay. Section 362(d) of the Bankruptcy Code states that a "party in interest" can request relief from the automatic stay.[3]

In most cases only a creditor would qualify as a party in interest under section 362(d) of the Bankruptcy Code. *In re Comcoach Corp.*, 698 F.2d 571 (2nd Cir. 1983); *In re Tour Train Partnership*, 15 B.R. 401 (Bkrtcy.D.Vt.1981). This is not always the case, however, *See, e.g., In re Johns-Manville Corp.*, 31 B.R. 965 (S.D. N.Y.1983) (Debtor's insurer is a party in interest). Indeed, section 1109(b) of the Bankruptcy Code[4], although not applicable in this case, clearly indicates that "a party in interest" under that section is not restricted to creditors. Thus, this court concludes that "a party in interest" under section 362(d) must be determined on a case by case basis with reference to the interest asserted and how said interest is affected by the automatic stay.

It is clear under Ohio law that a purchaser at a judicial sale acquires no vested rights until after the sale is con-

---

1. 11 U.S.C. section 101(9) of the Bankruptcy Code provides:

   (9) 'creditor' means—
   (A) entity that has a claim against the debtor *that arose at the time of or before the order for relief* concerning the debtor;
   (B) entity that has a claim against the estate of a kind specified in section 502(f), 502(g), 502(h) or 502(i) of this title; or
   (C) entity that has a community claim;
   (Emphasis supplied)

2. Section 101(4) of the Bankruptcy Code, 11 U.S.C. section 101(4) provides:

   (4) 'claim' means—
   (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
   (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

3. Section 362(d) of the Bankruptcy Code, 11 U.S.C. section 362(d) provides:

   (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
   (2) with respect to a stay of an act against property, if—
   (A) the debtor does not have an equity in such property; and
   (B) such property is not necessary to an effective reorganization.

4. Section 1109(b) of the Bankruptcy Code, 11 U.S.C. section 1109(b) provides:

   (b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

firmed. *Gorrell v. Kelsey,* 40 Ohio St. 117 (1883); *Reed v. Radigan,* 42 Ohio St. 292 (1884); *Citizens Loan & Savings Co. v. Stone,* 1 Ohio App.2d 551, 206 N.E.2d 17 (Madison Co.1965). Until the sale is confirmed and the sheriff's deed is delivered, a purchaser's rights to the property are inchoate and imperfect. *Gorrell v. Kelsey, supra.* On the other hand, the confirmation of a judicial sale relates back to the day of the sale and passes title as of that day. *Jashenosky v. Volrath,* 59 Ohio St. 540, 53 N.E. 46 (1898). Even before the sale is confirmed, the purchaser acquires certain rights which are entitled to judicial protection. The purchaser is entitled to rents for the period between sale and confirmation. *Jashenosky v. Volrath, supra.* Absent fraud or mistake a purchaser is generally entitled to confirmation, as a court may not arbitrarily refuse confirmation. *Walker v. Scott,* 7 Ohio App. 335 (Hamilton Co.1914); *Central National Bank v. Ely,* 37 Ohio L.Abs. 18 (App. Cuyahoga Co.1942).

■ It follows from the above cases that Mr. Neverman acquired some interest in the debtors' property at the judicial sale. Although this interest is not vested, it is substantial; it gives Mr. Neverman the potential to acquire the debtors' property in fee simple. Furthermore, Mr. Neverman's interest is directly affected by the automatic stay; if it were not for the stay, he could seek confirmation of the sale and thereby acquire title to the property. Under these facts the court concludes that Mr. Neverman is a party in interest with standing to seek relief from stay.

5. The debtor's statutory right of redemption is found at section 2329.33 of the Ohio Revised Code (O.R.C.) which provides:

In sales of real estate on execution or order of sale, at any time before the confirmation thereof, the debtor may redeem it from sale by depositing in the hands of the clerk of the court of common pleas to which such execution or order is returnable, the amount of the judgment or decree upon which such lands were sold, with all costs, including poundage, and interest at the rate of eight per cent per annum on the purchase money from the day of sale to the time of such deposit, except

## THE DEBTORS' INTEREST

The debtors presently hold legal title to the property. This is bare legal title, however; absent the stay the debtors would lose all interest in the property upon confirmation of the sale. Outside of the bankruptcy context, the debtors could prevent losing their property pursuant only to their statutory right of redemption, Ohio Revised Code section 2329.33.[5]

■ By filing their petition under Chapter 13, the debtors have gained the additional protection provided by the Bankruptcy Code. Although there is not unanimous agreement, most courts allow chapter 13 petitioners to "de-accelerate" and cure a defaulted residential mortgage. *See, In re Taddeo,* 685 F.2d 24 (2nd Cir.1982); *In re Gwinn,* 34 B.R. 936 (Bkrtcy.S.D.Ohio 1983). Many courts allow "de-acceleration" even after a judgment of foreclosure, and some even after a judicial sale. *See In re Gwinn, supra.,* and cases cited therein. *See also,* Annot., 67 A.L.R.Fed. 217 (1984). Thus, even though the debtors have suffered a judgment of foreclosure and a judicial sale, they still have an interest in the property entitled to the protection of the Bankruptcy Code.

## THE DEBTORS' PROPOSED SALE

The important pragmatic difference between Chapter 13 and Chapter 7, for most debtors, is that under the former the debtors may retain their non-exempt assets, especially their homes. In the present Chapter 13 proceeding, the debtors seek the court's approval to sell their residence.

where the judgment creditor is the purchaser, the interest at such rate on the excess above his claim. The court of common pleas thereupon shall make an order setting aside such sale, and apply the deposit to the payment of such judgment or decree and costs, and award such interest to the purchaser, who shall receive from the officer making the sale the purchase money paid by him, and the interest from the clerk. This section does not take away the power of the court to set aside such sale for any reason for which it might have been set aside prior to April 16, 1888.

The debtors admit that their proposal is unorthodox, but they insist that it is the only way they can retain possession of their home.

The second mortgagee, Citicorp, urges the court to grant the debtors' complaint. It argues that the proposed sale is authorized under O.R.C. section 2329.33. Citicorp also argues that under the debtors' proposal, its claim would be paid in full. The arguments raised by the debtors and Citicorp are not without force. After careful consideration, however, the court finds that the debtors' complaint cannot be granted.

Citicorp states that the debtors' proposed sale comports with the Ohio redemption statute, O.R.C. section 2329.33. Mr. Neverman disagrees, citing *Wayne Savings and Loan Co. v. Young*, 49 Ohio App.2d 35, 358 N.E.2d 1380 (Wayne Co.1976). *Wayne Savings and Loan* held that O.R.C. section 2329.33 confers upon a debtor a personal privilege rather than a property right, and that the debtor's right of redemption is non-transferrable. Mr. Neverman argues that the debtors' proposed sale, in effect, involves an invalid transfer of the debtors' right of redemption under O.R.C. section 2329.33.

This court will not decide the issue raised by Mr. Neverman. Since Mr. Neverman's motion for relief from stay will be granted, such a decision would be improper. The debtors will still have their right to redemption up until the order of confirmation. If their proposal comports with the requirements of O.R.C. section 2329.33, then they will not be prejudiced by seeking their relief in state court. This court will not decide this issue which is likely to be raised in the state court.

It might be argued that this court could grant the debtors' complaint even if it is not allowable under O.R.C. section 2329.33. There are many instances where bankruptcy proceedings pre-empt contrary state law provisions. For example, the decisions allowing de-acceleration of residential mortgages often alter the state law rights of mortgagees. *See, e.g., In re Taddeo, supra; In re Gwinn, supra.* and cases cited therein. Similarly, a creditor who is "secured" under state law might find itself "unsecured" under the Bankruptcy Code, pursuant to 11 U.S.C. sections 506 or 522(f). Generally, however, there is some statutory basis in the Bankruptcy Code for the pre-emption of state law. For example, the courts allowing de-acceleration of mortgages base their decision on 11 U.S.C. section 1322(b). *See* Annot. 67 A.L.R.Fed. 217 (1984).

In the present case, neither the debtors nor Citicorp have cited a case or statute under the Bankruptcy Code which would authorize the debtors' proposal. It might be thought that 11 U.S.C. section 1322(b)(8) would authorize the debtors' proposed sale.[6] Courts will not allow debtors to use 11 U.S.C. section 1322(b)(8) where the contemplated sale of property is merely speculative; debtors must show the likelihood of a sale. *In re Gavia*, 24 B.R. 573 (Bkrtcy.App. 9th Cir.1982); *In re Tucker*, 34 B.R. 257 (Bkrtcy.W.D.Okla.1983). The Vielands have shown that a sale will be consummated. Nevertheless, the court finds that the Vielands' proposed sale is not authorized by 11 U.S.C. section 1322(b)(8).

Section 1322(b)(8) of the Bankruptcy Code authorizes the sale of property under a plan. The debtors' proposed sale is not pursuant to a plan, however. The last plan filed by the debtors stated that they would keep their house. This is inconsistent with the debtors' present scheme to sell their house. Thus, technically, section 1322(b)(8) does not authorize the debtors' sale.

Section 1322(b)(8) is inapplicable on a fundamental level also. This provision contemplates the liquidation of a debtor's equity in property so that the claims of creditors may be paid. *In re Gavia, supra.; In re Anderson, supra.; In re Moore*, 17 B.R. 551 (Bkrtcy.M.D.Fla.1982). The debtors

---

**6.** 11 U.S.C. section 1322(b)(8) provides:
(b) Subject to subsection (a) and (c) of this section, the plan may—

(8) provide for the payment of all or any part of a claim against the debtor from property of the estate or property of the debtor;

apparently have no equity in their home, however, because the sale proceeds will not even satisfy the claim of the second mortgagee. Citicorp's claim must be satisfied with other funds. The court concludes, therefore, that there is nò authority under the Bankruptcy Code for the debtors' proposed sale.

The court is also troubled by the very structure of the debtors' proposal. The debtors have failed to explain their understanding with Commodore concerning the terms under which Commodore will reconvey the title to the property to the Vielands. The terms of any such agreement might well affect these bankruptcy proceedings.

The court is also concerned about the so-called "loan" from Mr. Vieland's parents, the proceeds of which will be used to pay Citicorp. The purpose and statutory design of Chapter 13 is to encourage individuals with regular income to pay their own debts. *In re Andrews*, 15 B.R. 717 (Bkrtcy.S.C.1981); *In re Lockwood*, 5 B.R. 294 (Bkrtcy.S.D.Fla.1980). Thus, it is contrary to the spirit of Chapter 13 for a debtor to settle her debts with loan proceeds from her parents. *In re Safka*, 18 B.R. 196 (Bkrtcy.Vt.1982) citing *In re Andrews, supra.* and *In re Lockwood, supra.*

Citicorp claims that it will be prejudiced if the court does not grant the debtors' complaint because its claim will not be paid in full. Regardless of any prejudice to Citicorp it is clear from the foregoing analysis that this court cannot approve the debtors' sale.

Furthermore, the court is unmoved by Citicorp's claim of prejudice. It was Citicorp which wanted the foreclosure sale to proceed as scheduled in the first instance. If it thought Mr. Neverman's bid was inadequate for the property, it could have submitted a higher bid. The fact that the arrearage on its mortgage may have increased since the filing of the chapter 13 does not now make Mr. Neverman's bid inadequate. Citicorp could have protected its position by filing a motion for adequate protection in the form of current monthly mortgage payments. Citicorp has failed to do this. Having originally requested the sale to go forward and having failed to ask for adequate protection, Citicorp will not be heard to complain of prejudice.

## NEVERMAN'S MOTION FOR RELIEF FROM STAY

Neverman contends that, following the sheriff's sale, the property ceased to be property of the estate and that pursuant to 11 U.S.C. section 362(c)(1) [7], the stay is no longer in force with respect to this property. The court has already found that the debtors have an interest in the property even though the stay was originally lifted to permit the sheriff's sale. It follows, under section 541 of the Bankruptcy Code that the property is still property of the estate.[8]

Mr. Neverman also argues that the debtors have lost their right of redemption pursuant to 11 U.S.C. section 108(b) and thus the stay should be lifted [9]. He argues

7. 11 U.S.C. section 362(c)(1) provides:
(c) except as provided in subsections (d), (e), and (f) of this section—
(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; ...

8. Section 541 of the Bankruptcy Code, 11 U.S.C. section 541 provides in pertinent part:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable

interests of the debtor in property as of the commencement of the case.

9. 11 U.S.C. section 108(b) provides:
(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

that the debtors' right of redemption ended 60 days after the filing of their bankruptcy petition under 11 U.S.C. section 108(b)(2). The court rejects this argument. Section 108(b) applies, by its own terms, "if applicable law ... *fixes* a period...". The Ohio redemption statute, O.R.C. section 2329.33, does not fix any specific period for redemption. The statute allows redemption "at any time before confirmation [of the sale]". Although this limits the right of redemption, it does not fix a period. The fact that most sales are confirmed a short time after the sale was held does not fix a period either. The court finds that 11 U.S.C. section 108(b) does not apply to these proceedings.

Mr. Neverman also contends that the stay should be lifted pursuant to section 362(d)(2) of the Bankruptcy Code, cited above. To gain relief under this section, Mr. Neverman must show that the debtor does not have any equity in the property and that the property is not necessary to an effective reorganization.

Prior to the foreclosure sale, the house was appraised at $102,000. It is questionable, however, whether this price could ever be received. Mr. Neverman's bid of $85,100 was the highest bid at the sheriff's sale. Even Mr. Liebowitz, the debtors' personal friend, is apparently willing to pay only $88,000 for the property on behalf of Commodore. Even if the court accepts the appraised value of the property, the balance due to the two mortgagees is almost $100,000. After taxes and expenses were paid, the debtors would realize virtually nothing even after a hypothetical sale of $102,000. Thus, the court finds that the debtors do not have any equity in the property.

█ There is a dispute whether section 362(d)(2), which uses the word "reorganization", applies to Chapter 13 proceedings. *Compare, e.g. In re Feimster*, 3 B.R. 11 (Bkrtcy.N.D.Ga.1979) (does not apply to Chapter 13), *with In re Zellmer*, 6 B.R. 497 (Bkrtcy.N.D.Ill.1980) (does apply to Chapter 13). This court notes that, according to 11 U.S.C. section 103(a)[10], section 362(d)(2) does apply to Chapter 13. Thus, the better view, which this court follows, is that section 362(d)(2) is applicable in Chapter 13 proceedings. *See, In re Garner*, 13 B.R. 799 (Bkrtcy.S.D.N.Y.1981); 5 Collier on Bankruptcy, ¶ 1300.45[5] (15th ed. 1984).

The debtors, of course, claim that the property is essential to the Chapter 13 rehabilitation. Indeed, their primary purpose in filing their petition was to save their home from foreclosure. Mere necessity is not enough, however. The property must be essential for an "effective" reorganization.

█ "Effective" reorganization means that there must exist a reasonable possibility of a successful reorganization or rehabilitation. Where such possibility does not exist, the property is not essential to an effective reorganization. *In re Taylor*, 28 B.R. 691 (Bkrtcy.S.D.Ohio 1983); *In re Stewart*, 11 B.R. 93, 95 (Bkrtcy.N.D.Ga. 1981).

The arrearage on the two mortgages on the property are well over $15,000 and the debtors have made no showing they could successfully fund a plan which could cure these arrearages. In fact, the debtors admit that the only way they can save this home is through their proposed sale.

█ This admission, in turn, exposes the fundamental inconsistency of the debtors' position. They claim that the property is necessary for their reorganization, yet they propose to sell it. The debtors' proposed sale is itself a confession that the property is not essential to their reorganization. Of course, the debtors assert that they will regain title to their property under their proposal, but they have failed to

---

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and (2) 60 days after the order for relief.

**10.** 11 U.S.C. section 103(a) provides:

(a) Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, or 13 of this title.

disclose any of the particulars of how this will be accomplished.

The court finds, therefore, that the property is not essential for an effective reorganization. It follows that Mr. Neverman is entitled to relief from stay to seek confirmation of the sheriff's sale.

The court expresses no opinion as to whether the sheriff's sale should be confirmed or as to whether the debtors' proposal constitutes a valid redemption under state law. These matters may now be considered by the appropriate state court.

The court also recognizes that Mr. Neverman's rights in the property are somewhat ambiguous and that ordinarily relief from stay is granted only to secured creditors. *See e.g. In re W.R.S.*, 34 B.R. 31 (Bkrtcy.N.D.Ohio 1983). The facts of this case are unique, however. After nearly eight months of these proceedings without a confirmed plan, and with no likelihood of a cure of the mortgage arrearages under any future plan, Mr. Neverman is entitled to have his rights in the property determined by the state court.